| 6 | 327 |
| 6 | 379 |
| 23* | 754 |
| 24* | 98 |

| 6 | 327 |
| 9 | 123 |
| 23* | 754 |
| 33* | 254 |

| 6 | 327 |
| s 6 | 379 |
| 17 | 326 |

# JOHN W. MAXFIELD, Appellant, v. JOSEPH A. WEST, and others, Respondents.

STATUTE OF FRAUDS.—PAROL CONTRACT.—POSSESSION.—A parol sale of land without possession taken is invalid, although part of the purchase price was paid at the time of the making of the contract.

ID.—ID.—PAYMENT OF PURCHASE PRICE.—The defendant West purchased certain real estate at a trustee's sale under a trust deed and took the deed in his own name as trustee for Maxfield, and Maxfield entered into possession and left the property with West as agent. Afterwards by agreement between Maxfield and Grant, the holder of the trust deed, the sale to Maxfield was declared off. Afterwards Grant and Maxfield agreed to renew the old agreement, and Maxfield gave Grant his note for $2,000. In the meantime West, who still held the legal title, before he had notice of the renewed agreement bargained the property to the respondent Kiesel, but before the bargain with Kiesel was consummated both West and Keisel had full notice of the renewed sale: *held*, that the renewed contract was within the Statute of Frauds and void, because no possession was taken under it, even though payment of part of purchase price was made.

PRACTICE—FINDINGS—DECREE—*Semble* if the decree is according to the evidence in a suit in equity, it makes no difference whether it is supported by the findings or not.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The findings of the court below were that Joseph A. West had possession of the premises from May 13th, 1887, until he delivered it to defendant Kiesel; that on May 11th, 1887, West purchased said premises and received a good and sufficient deed therefor and held the legal title until he delivered it to Keisel; that West in purchasing acted for Maxfield, the plaintiff, but Maxfield never at any time paid any money; that West within two days after his purchase leased the premises to Lundy and McKinney for six-months and during that time collected the rent and appropriated the proceeds to his own use; that about May

20th, 1887, West and wife executed a deed to Maxfield, but Maxfield refused it and negotiations were brought to an end, Maxfield having paid nothing; that on August 19th, 1887, Kiesel purchased from West for $2,000 the premises and warranty deed was executed; that September 5th, 1887, Maxfield first claimed the legal title; that on October 12th, 1887, this court ordered the deed from West to Kiesel to be delivered, and it was done, full consideration having theretofore been paid; that Kiesel never had any intimation that Maxfield claimed the legal title until September 15th, 1887, nor that he claimed the equitable title until May 10th, 1888; that Kiesel sold the property to defendant Sarah Kershaw for $3,000 and no more; that all previous contracts between Maxfield and West or Grant were rescinded July 23d, 1887, and the note of Maxfield was then returned to him; his note for $2,000 and all money paid on said note and mortgage given to secure it was returned to Maxfield with one per centum per month interest, and the relation of beneficiary and trustee between West and Maxfield then ceased; that Maxfield and Grant made another contract verbally on August 18th, 1887, by which plaintiff was to have said premises at the same price as in the first contract, and then executed his note for $2,000, ante-dated May 14th, 1887, to correspond with the first contract, and paid to Grant on it $400; that Grant then wrote to West notifying him of the new contract, but West did not get the letter until several days afterward; that when West sold to Keisel neither he nor Ransford Smith, West's attorney, knew of the renewed agreement, and that Maxfield made a subsequent payment to Grant of $600.

The remaining facts are stated in the opinion of the court.

*Messrs. Sutherland and McBride* for the appellant.

*Mr. A. R. Heywood* for the respondent.

BLACKBURN, J.:

Heber J. Grant, for himself et al., loaned to Straub $2,000, and took a trust-deed to secure the same. The

money was not paid, and the property in controversy was sold to pay the same. The respondent West was a part owner of the money loaned. At the sale the property was bid off for $2,000 by West for the appellant, in pursuance of a previous arrangement between appellant and Grant, which was that appellant was to take the property at that sum, and pay for the same in installments. West took the deed in his own name, and requested Straub in writing to deliver the possession of the property to appellant, as he had bid it off for him. Appellant took possession of the property, and left it with West to rent for him. The property was in the city of Ogden. West lived in Ogden, and appellant and Grant lived in Salt Lake City. Afterwards appellant paid to Grant $600 on the property, and gave a note and mortgage to secure the balance. West leased the property for six months, the title still remaining in him, and executed a deed, subject to the lease, and tendered the same to appellant, and appellant refused to accept it with the clause subject to the lease, and thereupon he complained to Grant, and he and Grant mutually agreed that the trade should be declared off, and Grant paid him back his $600, with interest, and the note given was canceled. It seems the property did not sell for enough to pay off the whole debt to Grant and the parties interested, and West testifies appellant agreed, in order to make up some of the loss they had suffered, that he (West) might have the rent on the property for six months. This appellant denied, and on account of this disagreement the trade was declared off. The sale was in May, 1887. Afterwards, in August, Grant and West having failed to sell the property, West informed Grant that he was willing to allow appellant to have the six months' rent if he would now take the property on the original agreement, and Grant and appellant met in Salt Lake City, and renewed the old agreement, and appellant gave his note to Grant for $2,000, dated of the same date as the one that was canceled, so as to fit the description in the mortgage which had not been receipted on the record, and paid Grant $400, which was credited on the same. In the mean time, before he had any notice

·of the sale to appellant, West bargained the property to the respondent Fred J. Kiesel, but both he and Kiesel had notice of the sale to the appellant before this trade was ·consummated; but West had gone from home, and had left a deed duly executed by himself and wife, to be deliv- ·ered to Kiesel on payment of the purchase money. When West learned the facts, he refused to carry out either trade, and did not deliver the deed to Kiesel, and take the purchase money, although tendered to him. Appellant then commenced this suit against West alone, alleging he had paid for the property and was entitled to a deed therefor. A few minutes afterwards Kiesel commenced a suit claiming substantially the same thing. Kiesel's suit went to judgment, and a decree was made giving him the property.

It is not necessary to go into the details of the suit of Kiesel, as we think that suit in no way determines the rights of the parties to this suit, as appellant was not a party to it. When his suit was commenced appellant had paid on the purchase money of the property to Grant something over $1,000. As to whether the agreement about the rent for six months, as stated by West, is true or not, we will not decide, for it was a controverted fact, and about it there was conflicting evidence, and the Court be- low found the fact to be with West. There was evidence enough to support that finding, if not a preponderance in its favor, and the rule is the same as in reference to the finding of a jury that the appellate court will not disturb it unless it is clearly wrong. But we think that fact wholly immaterial, for the parties disagreed about it, and mutually agreed the trade was off, and the appellant took back the money that was paid and his note, and that ended the whole matter up to that time, and neither party could claim any- thing on account of the cancelled agreement. We have nothing to do with the question whether the decree against West in favor of Kiesel was correct or not; for, if the ap- pellant could enforce his claim against West, he could also against Kiesel, as Keisel had notice of appellant's rights before he paid for the property, or tendered payment, and was made a party to this suit by an amended complaint.

The question then is, can the appellant enforce his agree-
ment with Grant of the date of August 19th, against the
respondent West and his grantees ?   We think not.   The
property has been left on West's hands as the owner, and
the appellant had no more claim upon it than a stranger,
assuming that Grant had had authority to sell it to the
appellant, and that he did bargain it to him, the new con-
tract would require the solemnity and the same requisites
to make it valid under the statutes of frauds as if made
with a stranger under the statute.   2 Com. Laws Utah,
153, 154.   A person acquires no equity in law that can be
enforced in a court of equity by a parol purchase, with a
part payment of the purchase money.   This is a parol
transfer of land, with a part payment of the purchase
money, no possession passing under the contract; for, if
the appellant had possession under the first contract, he
had completely abandoned it by a cancellation of that con-
tract.   The fact that a part of the purchase money had
been paid was not of itself sufficient in equity to take the
parol contract out of the statute.   3 Pom. Eq., Jur. Sec.
1409.   Much is said in the briefs of counsel about the
findings of fact and conclusions of law made by the Court
below.   It makes no difference how erroneous these may
be, the decree is right.   The decree is affirmed.

ZANE, C. J., and ANDERSON, J., concurred.