## MERRITT ET AL. v. TEMPLE.

[No. 18,806.   Filed November 27, 1900.]

MORTGAGES.—*Delivery.*—*Deeds.*—*Priority.*—One of the makers of a promissory note authorized the payee thereof to procure a loan for her from a person named, agreeing to execute a mortgage upon certain real estate and pay the proceeds thereof upon the note. The payee thereafter called at her residence with a note and mortgage which she executed and gave to the payee, who credited the amount thereof upon the note held by him, and, the next day, delivered the note and mortgage to the mortgagee, who gave him a check for the amount and filed the mortgage for record in the recorder's office of the county. Immediately after signing the mortgage the mortgagor signed and acknowledged a deed conveying the mortgaged premises to her step-granddaughter, who was a joint maker of the first note. *Held*, that the delivery of the mortgage was complete and effectual, and *eo instanti* became a valid lien upon the land.

From the Clinton Circuit Court.   *Affirmed.*

*M. A. Morrison* and *Seabury Merritt,* for appellants.
*J. C. Farber,* for appellee.

HADLEY, J.—Which in point of time was first delivered, a mortgage securing an indebtedness, or a deed conveying the legal title to the same lands? This is the real question presented by the record and is decisive of all. It arises under a motion for a new trial upon the ground that certain facts returned in the special finding relating to the delivery of the mortgage are not sustained by sufficient evidence and are contrary to law. This calls for a review of the special finding. A special finding must be construed as a whole, and not in fragmentary parts. Each part must be construed in connection with every other part relating to the same transaction, and, if taken as a whole, the finding legitimately supports the judgment, it must stand. *Cleveland, etc., R. Co.* v. *Closser,* 126 Ind. 348, 367, 22 Am. St. 593; *Brown* v. *Estate of Brown,* 2 Ind. App. 435, 438; Elliott's Gen. Prac., §973.

The rule which should guide an appellate tribunal in reviewing a special finding of facts by a court is the same as that which prevails with respect to a verdict of the jury. It is this: "Where the finding is supported by the evidence it will not be disturbed, but if entirely unsupported the finding will not be allowed to stand." Elliott's Gen. Prac., §979; *Devlin* v. *Quigg,* 44 Minn. 534, 47 N. W. 258, 20 Am. St. 592; *Davidson* v. *Morrison,* 86 Ky. 397, 407, 5 S. W. 871, 9 Am. St. 295.

There was evidence in support of these facts: August 8, 1893, Harriet H. Burget, hereinafter called Mrs. Burget, then in life, was the owner of the land in controversy. She and Harriett Merritt, her step-granddaughter and who lived with her on the farm in the same house, and hereinafter called Mrs. Merritt, had in 1889 become jointly indebted to Emanuel Burget on a promissory note for $3,000, which note was due and unpaid. A few days before said August 8th, Emanuel Burget having solicited payment of

his note, Mrs. Burget authorized Emanuel Burget to pro-
cure a loan for her of $2,050 from Oliver Gard, and agreed
to execute her note and mortgage on the land in controversy
to secure the same, and that the money so procured should
be all retained by said Emanuel Burget as a part payment
of his $3,000 note.

Whereupon, on August 8th, Emanuel Burget and Sea-
bury Merritt, a notary public, called at the residence of
Mrs. Burget and Mrs. Merritt, and Mrs. Burget signed a
note for $2,050, payable to Oliver Gard, and signed and
acknowledged a mortgage on said land to secure said note,
and, after completion of the instruments, handed the same
to Emanuel Burget, who thereupon entered a credit on said
$3,000 note for $2,050,—all with the full knowledge at the
time of Mrs. Merritt, who had been made the beneficiary of
said lands under the executed will of Mrs. Burget.

Within the following thirty minutes after the delivery
of the note and mortgage to Emanuel Burget, Mrs. Burget
signed, acknowledged, and delivered to Mrs. Merritt a deed
conveying to her the legal title of the mortgaged premises,
together with other real estate, and thus stripped herself of
all property except a small amount of household goods; and
upon the evening of the same day, August 8th, Mrs. Mer-
ritt, through the agency of Seabury Merritt, caused her
deed to be recorded in the proper records of the county.
Emanuel Burget held possession of the note and mortgage
until the following day, August 9th, when he took them to
the city of Frankfort, and presented them to Oliver Gard,
who inspected them, and, finding them executed in due
form, gave Emanuel Burget his check for $2,050, and at
once, August 9, 1893, filed the mortgage for record in the
recorder's office of the county.

We have found no evidence in the record that Mrs. Burget
actually delivered the mortgage to Gard, the nominal mort-
gagee, on August 8th, and before the execution of the deed
to Mrs. Merritt as the finding states; nor do we deem such

evidence or fact material.  The essential question is, had
Mrs. Burget, as mortgagor, in performance of her agree-
ment with respect to the loan, intentionally placed the mort-
gage beyond her control, before she executed the deed to
Mrs. Merritt?

Delivery becomes effectual when the grantor surrenders
dominion of a complete instrument with intent thereby to
make it operative.  Berry v. Anderson, 22 Ind. 36, 39;
Somers v. Pumphrey, 24 Ind. 231, 239; Fewell v. Kessler,
30 Ind. 195; Hotchkiss v. Olmstead, 37 Ind. 74, 84; Nye
v. Lowry, 82 Ind. 316, 320; Stokes v. Anderson, 118 Ind.
533, 545, 4 L. R. A. 313; Anderson v. Anderson, 126 Ind.
62, 66; Osborn v. Eslinger, ante, 351.

It is important to bear in mind that, under the agreement,
Emanuel Burget was to have all the money received from
the loan for application upon his claim, and Mrs. Burget
was to have only a credit for the amount upon her and Mrs.
Merritt's note.  Mrs. Merritt was jointly answerable for the
debt to be discharged.  The farm mortgaged was willed to
her, and was liable for the debt whether as the property of
Mrs. Burget, or ultimately as the property of Mrs. Merritt.
Both were equally interested in the payment of the debt,
one with a vested, the other with a prospective interest in the
land.  There was also evidence tending to show that Mrs.
Merritt was the principal actor for her grandmother in ar-
ranging for, and in the consummation of the Gard loan, and
had full knowledge of the execution of the mortgage at the
time it was done, and at the time she accepted her deed, a
few minutes later.  And these two transactions, accom-
plished within the same hour, at the same place, and before
the same officer, considered together, clearly indicate a pur-
pose on the part of Mrs. Burget not only to provide for her
debts, but to consummate by deed what she had intended
by will, her design to confer the remainder of her estate
upon her granddaughter.  With this object in view Mrs.
Burget signed and acknowledged the mortgage, and when

Merritt *v.* Temple.

thus in form a valid mortgage she handed it and the note to Emanuel Burget, without condition or reservation, unquestionably an intentional and as a final step in keeping her agreement with Burget, and then and there received from him all that she had bargained for, namely, a credit upon her obligation for the full amount of the note and mortgage. When this was done Mrs. Burget had received the full consideration for the mortgage, had received all that she was entitled to, and the one rendering her the consideration, with her full knowledge and approval, had received her note and mortgage, had acquired a vested interest in them, and, so far as she was concerned, the transaction was closed. Any further steps remained solely to Burget and Gard. What difference could it make to Mrs. Burget, after she became possessed of all she contracted for, when or how Burget and Gard settled as between themselves, whether upon the same or upon a subsequent day, or whether Burget received from Gard money, credit, a store, or a steam engine? Suppose Burget, in anticipation that Gard would replace it, had in the first instance advanced to Mrs. Burget the money on the mortgage, and she in turn had given it back to him in payment *pro tanto,* of her and Mrs. Merritt's note, could it be said in that case that she might keep the money and recall or abrogate the mortgage at any time before it reached the hands of Gard? In legal effect this is precisely what had been done when she delivered the note and mortgage to Burget and accepted from him the credit upon her obligation. When Mrs. Burget, having completed the note and mortgage, intentionally and unconditionally handed them over to Burget, in the execution of her purpose to secure the loan, and received from him the full consideration, the delivery was complete and effectual as to her and *eo instanti* became a valid lien upon the land according to the tenor of the mortgage.

There is abundance of evidence in support of the finding that Mrs. Burget was the owner of the land when she exe-

cuted and delivered the mortgage for the purpose of securing the loan, and that, in point of time, the execution of the mortgage was prior to the execution of the deed to Mrs. Merritt. Upon these facts the judgment is clearly right, and if it is a matter of fact (as found by the court) and not a conclusion of law (which we deem unimportant to decide) that the mortgage was delivered to Gard August 8th, and before the execution of the deed, the inaccuracy in finding that the delivery was to Gard rather than to Emanuel Burget cannot injure the appellants, and is therefore no ground for reversal. *Platter* v. *Board, etc.,* 103 Ind. 360, 385; *Bothwell* v. *Millikan,* 104 Ind. 162, 164; *Slauter* v. *Favorite,* 107 Ind. 291, 300; *Sphung* v. *Moore,* 120 Ind. 352, 354.

We find no available error in the record. Judgment affirmed.