(June 29, 1908.)

## SARAH A. BOWERS et al., Respondents, v. MAY BELLE COTTRELL, Appellant.

### [96 Pac. 936.]

ACTION TO QUIET TITLE—FRAUDULENT CONVEYANCE—DEED—DELIVERY—
WHEN TITLE PASSES—FINDINGS.

1. A court of equity will not interfere or grant relief to a debtor who has transferred his property for the purpose of defrauding his creditors, in an action against the grantee to recover such property.

2. Where there is no conveyance, the general rule that a court of equity will not grant relief to the person who has made a deed to defraud creditors does not apply.

3. Whether property has been conveyed for the purpose of defrauding the creditors of the grantor, depends upon whether or not the deed transferring such property was ever delivered and accepted by the grantee.

4. No particular form of delivery of a deed is required. Whether there was a delivery of a deed so as to pass title depends in a great measure upon the particular circumstances of each case, the test being, was a delivery made by grantor to grantee, or some other person for grantee, and accepted by the grantee, with the intention of passing title and making such instrument the deed of the grantor Delivery includes surrender and acceptance, and both are necessary to its completion. The grantor must be willing and agree to deliver, and the grantee must be willing and consent to receive, and this accord of wills must be evidenced in some way to show the unequivocal intention of both parties that the instrument shall take effect according to its purport and tenor.

5. Where the grantee fraudulently secures possession of a deed without the knowledge or consent of the grantor, such deed conveys no title to the grantee, and the latter acquires no rights thereunder.

6. A deed executed to correct an error in a void deed, and not for the purpose of conveying title, does not amount to a ratification of such void deed, or pass title to the property therein described.

7. Where there is substantial evidence to support the findings of the court, they will not be set aside on the ground of insufficiency of the evidence.

8. *Held,* in this case, the evidence supports the findings of the court.

9. When the findings of the court are inconsistent with the defendant's case, and in effect against the defendant on the issue made by the answer, and clearly show the plaintiffs' right to recover, notwithstanding the answer, the findings are. sufficient.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Fremont Wood, Judge.

An action to quiet title. Judgment for plaintiff. Defendant appeals. *Affirmed.*

Alfred A. Fraser, for Appellant.

It is against the policy of the law to enable either party, in controversies between themselves, to enforce an agreement in fraud of the law or which was made to injure another. (*Randall v. Howard*, 67 U. S. 590, 17 L. ed. 269; Story Eq., vol. 1, sec. 298; *Bolt v. Rogers*, 3 Paige, 156; *Wilson v. Watts*, 9 Md. 356.)

Whenever two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct. (*Dent v. Ferguson*, 132 U. S. 68, 10 Sup. Ct. 13, 33 L. ed. 242.)

A court of equity will afford no relief to a debtor who has transferred his property for the purpose of defrauding his creditors and subsequently seeks as against the transferees to recover same back. (24 Cent. Dig., sec. 533, and cases cited; *Briggs v. Coffin*, 91 Iowa, 329, 59 N. W. 259; *Kitts v. Willson*, 130 Ind. 492, 29 N. E. 401; *Eyre v. Eyre*, 19 N. J. Eq. 42.)

A transfer of property made to defraud creditors is valid between the parties. (24 Cent. Dig., 523, and cases cited; *Montgomery v. Hunt*, 5 Cal. 366; *Goad v. Moulton*, 67 Cal. 536, 8 Pac. 63; 20 Cyc. 621.)

The findings of the trial court must be within the issues when compared with the pleadings, and must cover all the material issues raised, whether arising on allegations in the complaint and denied in the answer, or on affirmative defenses

pleaded in the answer. (*Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Dillon Imp. Co. v. Cleaveland,* 32 Utah, 1, 88 Pac. 670; *Stanley v. Flint,* 10 Ida. 629, 79 Pac. 815; *Carson v. Thews,* 2 Ida. 176, 9 Pac. 605; *Bowman v. Ayers,* 2 Ida. 305, 13 Pac. 346; *Tage v. Alberts,* 2 Ida. 271, 13 Pac. 19; *Haight v. Tryon,* 112 Cal. 4, 44 Pac. 318; 2 Spelling's App. Pr. 591; Haynes' New Trial and Appeal, sec. 240; *Armacost v. Lindley,* 116 Ind. 295, 19 N. E. 138; *Bartholomew v. Fayette Irr. Co.,* 31 Utah, 1, 120 Am. St. Rep. 912, 86 Pac. 481; *Whiting v. Hoglund,* 127 Wis. 135, 106 N. W. 391.)

N. M. Ruick, for Respondents.

When the determination of certain specific issues in a certain way renders other issues immaterial, no finding upon or determination of such immaterial issues need be made by the trial court or referee. (*Brand v. James,* 67 Wis. 541, 30 N. E. 934; *Witcher v. Conklin,* 84 Cal. 499, 24 Pac. 302; Spelling's New Trial & App. Prac., sec. 594; *Brison v. Brison,* 90 Cal. 323, 27 Pac. 186; *Fox v. Haarstick,* 156 U. S. 674, 15 Sup. Ct. 457, 39 L. ed. 576; *Snelgrove v. Earl,* 17 Utah, 321, 53 Pac. 1017; *Tage v. Alberts,* 2 Ida. 271, 13 Pac. 19.)

A deed is invalid if not delivered. Delivery depends on intention. (*Fitzgerald v. Goff,* 99 Ind. 28; *Jones v. Loveless,* 99 Ind. 317; *Tisher v. Beckwith,* 30 Wis. 55, 11 Am. Rep. 546; *Black v. Shreve,* 13 N. J. Eq. 455; *Martling v. Martling,* 47 N. J. Eq. 122, 20 Atl. 41; *Gould v. Wise,* 97 Cal. 532, 32 Pac. 576, 33 Pac. 323; *Younge v. Guilbeau,* 3 Wall. 636, 18 L. ed. 262.)

Parol testimony is competent to show intention as to delivery. (*Whitney v. Dewey,* 10 Ida. 633, 80 Pac. 1117, 69 L. R. A. 572; *Stevens v. Stevens,* 150 Mass. 557, 23 N. E. 378; *Black v. Schreve,* 13 N. J. Eq. 455.)

A stolen deed has no validity. (*Tisher v. Beckwith,* 30 Wis. 55, 11 Am. Rep. 546; *Hadlock v. Hadlock,* 22 Ill. 384.)

A ratification must be made by the grantor with full knowledge of his rights. (Devlin on Deeds, sec. 268; *Martling v. Martling,* 47 N. J. Eq. 122, 20 Atl. 41.)

An undelivered deed is incapable of confirmation. (*Barr v. Schroeder*, 32 Cal. 609.)

The recording of a deed, without knowledge of grantee, is no delivery. (13 Cyc. 569, and cases there cited; Devlin on Deeds, secs. 290, 291; *Babbitt v. Bennett*, 68 Minn. 260; 71 N. W. 22; *Sampson v. Thornton*, 3 Met. (Mass.) 275, 37 Am. Dec. 135; *Sullivan v. Eddy*, 154 Ill. 199, 40 N. E. 482.)

STEWART, J.—This is an action to quiet title. The cause of action, as disclosed by the complaint, is, in substance, that the plaintiffs, on June 16, 1905, executed their certain deeds purporting to convey the property described in the complaint to the defendant, then May Belle Coghlan, her daughter; that such deeds were never delivered to May Belle Coghlan and never intended to pass title to said defendant, and were retained in the possession of this plaintiff until on or about September 4, 1906, when they were surreptitiously, secretly and without the knowledge or consent of the plaintiffs, procured and placed upon record by the defendant, or some one at her instance or request; that no consideration was paid therefor, and said deeds were never intended to vest title in the defendant; that on the same day on which said instruments were executed, and at the same time and place, the defendant, May Belle Cottrell, executed to plaintiff her certain deeds purporting to convey to plaintiff said premises; that said deeds were taken into the possession of the plaintiff, Sarah A. Bowers, and were retained in her possession, with the deeds executed by Sarah A. Bowers, to May Belle Coghlan, but were never delivered and were retained by plaintiff, Sarah A. Bowers, until on or about September 4, 1906, when they were surreptitiously, secretly and without the knowledge or consent of plaintiffs, procured by the defendant May Belle Cottrell, or by some person at her instance and request, and retained by said defendant without being recorded.

To the complaint the defendant filed an answer specifically denying the allegations of the complaint, and alleged as an affirmative defense that on or about June 16, 1905, the plaintiff, Sarah A. Bowers, was indebted to various persons and

corporations in a large sum of money, and had signed obligations as surety for which she and her estate had become, or was to become, liable, and for the purpose of defrauding her said creditors, and particularly the Bank of Commerce, a banking corporation engaged in general banking business at Boise, Idaho, and that on or about June 16, 1905, an action had been commenced, or was to be commenced, against this plaintiff, Sarah A. Bowers, and one George Baldwin, to recover on a promissory note made by said plaintiff and said Baldwin in the sum of $8,000, and for the purpose of defrauding said Bank of Commerce and placing her said property beyond the reach of any process of court to subject the same to the payment of any judgment of the said Bank of Commerce, she voluntarily, together with her husband, made, executed and delivered all of said deeds mentioned in said plaintiff's complaint to the defendant, May Belle Cottrell, and for no other reason or purpose.

Upon the issues thus presented, the court made its findings and entered judgment in favor of the plaintiff. This appeal is from the judgment. The court found that the plaintiff, Sarah A. Bowers, was, on June 16, 1905, the owner in fee simple in her own right, and as her own separate property, of the real estate described in the complaint; that on said day she and her husband, Jacob R. Bowers, executed and acknowledged three several warranty deeds, bearing date April 28, 1905, purporting to convey to one May Belle Coghlan, now May Belle Cottrell, certain real property described in the complaint; that one of said deeds omitted in the description the block in which said lots were situated; that said deeds were without any actual consideration; that May Belle Coghlan, now, Cottrell, is the daughter of the plaintiff; that at the time of the execution of said deeds the same were delivered into the possession of the plaintiff, Sarah A. Bowers, and were not delivered to May Belle Coghlan, nor to anyone in her behalf, but were retained in the possession of Sarah A. Bowers until on or about September 1, 1906, at which time they were surreptitiously, secretly and without the knowledge or consent of the plaintiffs, or either

of them, procured by said May Belle Cottrell, or by some one at her instance and for her benefit,. and on September 4, 1906, caused to be filed for record in the office of the recorder of said Ada county; that the filing of the said instruments for record was without the knowledge, consent or acquiescence of this plaintiff; that on September 5, 1906, at the instance and request of W. L. Cuddy, county recorder, the plaintiffs executed a warranty deed purporting to convey to the defendant, May Belle Coghlan, a portion of the lands described in the complaint; that said deed recited the fact that the same was given to correct an error in the description of a certain other deed made between the same parties, dated April 28, 1905, and executed and acknowledged on June 16, 1905; that the deed bearing date September 5, 1906, was filed for record on the date the same was executed; that said deed was procured by said W. L. Cuddy, county recorder, to be executed and recorded at his own sole instance and request and without the knowledge or consent of the defendant, May Belle Cottrell, and in so acting said recorder was not the agent of the defendant, and that said May Belle Cottrell knew nothing of the execution of said deed, nor did she authorize its execution or its acceptance or the recording thereof, and that the same was never delivered to her nor to any person for her, and was wholly without consideration.

As conclusions of law from these findings, the court found that the four several deeds described in the complaint and in the findings, and each of them, were void and of no effect, and that the defendant, May Belle Cottrell, acquired no right thereunder, and that the plaintiffs were entitled to a decree declaring each of said deeds void and of no effect,. and to have the title to said property quieted in Sarah A. Bowers.

This appeal presents two questions for consideration: First: Were the deeds executed by plaintiff on June 16, 1905, delivered to the defendant, and did they pass title to the property therein described to the party named therein as grantee, to wit, May Belle Coghlan, now May Belle Cottrell?

Second: Did the court err in not finding upon the issue tendered by the defendant in her answer, to the effect that said deeds were made, executed and delivered by the plaintiff, Sarah A. Bowers, for the purpose of defrauding her creditors, and particularly the Bank of Commerce?

The trial court evidently made its findings and rendered judgment for the plaintiff upon the theory that the deeds, purporting to convey the property described in the complaint from plaintiff to defendant, were never delivered and therefore no title passed, for, if said deeds were delivered, and the title did pass by reason of the execution and delivery of said deeds, the plaintiff in this case cannot recover if such conveyances were made and received for the purpose of defrauding the creditors of the plaintiff, as a court of equity will not interfere or give relief to a debtor who has *transferred* his property for the purpose of defrauding his creditors in an action against the grantee to recover such property.

Counsel for appellant argues that the findings of the court to the effect, first, that the deeds were not delivered; second, that they were procured surreptitiously, secretly and without the knowledge or consent of plaintiffs by the defendant May Belle Cottrell; third, that they were filed for record without the knowledge, consent or acquiescence of plaintiffs or either of them, and fourth, that the deed dated September 5, 1906, was procured to be executed and recorded by W. L. Cuddy, county recorder, without the knowledge, consent or acquiescence of the defendant, May Belle Cottrell, or that the said May Belle Cottrell did not accept the same, are not supported by the evidence.

The real and important question involved in the contention of the plaintiff is: Did Sarah A. Bowers convey the property involved to May Belle Coghlan by the execution of the deeds on June 16, 1905? If such deeds passed title to the defendant, then the inquiry arises: Were such conveyances. made with the intention of defrauding the creditors of the plaintiff? Whether or not the deeds of June 16, 1905, passed title to the defendant, depends wholly upon the question of

the delivery of such deeds. What constitutes delivery of a deed, and when title passes by deed, has often been before the courts of this country, and the decisions are quite uniform on this question.

"As no particular form of delivery is required, the question whether there was a delivery of a deed or not so as to pass title must in a great measure, where it is not clear that an actual delivery has been effected, depend upon the peculiar circumstances of each particular case. The question of delivery is one of intention, and the rule is that a delivery is complete when there is an intention manifested on the part of the grantor to make the instrument his deed." (1 Devlin on Deeds, sec. 262.)

" 'The act, solemn and authentic, done in writing in form apt for the conveyance of land with signature and seal, does not take effect as a deed until delivery with intent that it shall operate. The intent with which it is delivered is important. This restricts or enlarges the effect of the instrument.' Even where the grantee is in possession of the deed, though that may raise a presumption of delivery, still 'it may be shown by parol evidence that a deed in possession of the grantee was not delivered.' . . . . The intention as well on the part of the grantee as the grantor is the controlling element in the question of delivery." (*Whitney v. American Ins. Co.*, 127 Cal. 464, 59 Pac. 897.)

"It is a settled principle of law that the evidence of delivery of a deed must come from without the deed; in other words, a deed does not upon its face show delivery, and therefore parol evidence is admissible to show such fact." (*Whitney v. Dewey*, 10 Ida. 633, 80 Pac. 1117, 69 L. R. A. 572.)

The supreme court of the state of New York, in the case of *Rousseau v. Bleau*, 14 N. Y. Supp. 712, 60 Hun, 259, in discussing this subject, says:

"In this case there was no actual delivery by the grantor to the grantee named in it, nor is there any evidence that the grantor ever gave any direction as to the time of its · delivery, or that it should ever be delivered. Delivery in some form is absolutely essential to its validity. . . . . 'Delivery includes surrender and acceptance, and both are nec-

essary to its completion. This must be the result of a contract—the meeting of two minds, the accord of two wills. The grantor must be willing and agree to deliver, and the grantee must be willing and consent to receive, and this accord of wills must be evidenced in some way to show the unequivocal intention of both parties that the instrument shall take effect according to its purport and tenor.' ''

The supreme court of Indiana, in the case of *Merritt v. Temple,* 155 Ind. 497, 58 N. E. 699, in discussing this question, says:

"Delivery becomes effectual when the grantor surrenders dominion of a complete instrument with intention thereby to make it operative."

The supreme court of California, in the case of *Gould v. Wise,* 97 Cal. 532, 32 Pac. 576, 33 Pac. 323, says:

"Delivery is the force that vitalizes the instrument. Here there was no life in the instrument, because there was no delivery. Delivery is dependent upon the intention, the consent of the grantor, and here there was an entire absence of intention to make a delivery until the notes and mortgage were also delivered. The respective acts of the grantee and grantor as to the delivery of the deed and the securities were to be concurrent. The delivery of the deed was dependent upon the assent of the grantor, and his assent was dependent upon the performance of acts by the grantee. The grantee's possession of the deed upon any other terms or conditions was against the assent of the grantor, and for that reason the instrument had no life. This principle is elementary."

In further discussing the defendant's possession of the deeds involved in that case, as disclosed by the evidence, the court says:

"Again, it has been repeatedly held that the fraudulent procurement of a deed deposited as an escrow from the depositary by the grantee named therein will not operate to pass title."

The supreme court of Wisconsin, in considering this subject in the case of *Tisher v. Beckwith,* 30 Wis. 55, 11 Am. Rep. 546, says:

"It is essential to the validity of a deed that it should be delivered, and such delivery to be valid must be voluntary, that is, made with the assent and in pursuance of an intention on the part of the grantor to deliver it, and if not so delivered it conveys no title. A deed purloined or stolen from the grantor, or the possession of which was fraudulently or wrongfully obtained from him without his knowledge, consent or acquiescence, is no more effectual to pass the title to the supposed grantee, than if it were a total forgery, and an instrument of the latter kind had been spread upon the record."  .

A concise and lucid statement of the legal propositions, with reference to the validity of a deed, is made by Judge Howk in the case of *Jones, Administrator, v. Loveless,* 99 Ind. 317:

"It is elementary law that a deed is not executed until it is delivered by the grantor. . . . . 'It needs hardly to be said that the delivery of a deed by the grantor to the grantee is an essential part of its execution. Without such delivery, a deed of conveyance, though signed, acknowledged and recorded, is wholly inoperative, and passes no title whatever to the premises therein described.' There is some contrariety of opinion in the adjudged cases in regard to what acts or words will constitute the delivery of a deed by the grantor to the grantee; but all the cases and all the law-writers, so far as we are advised, agree that the delivery, actual or presumptive, of a deed by the grantor to the grantee, with the intent thereby to give effect to such deed, is indispensably necessary to its validity."

In the light of the law, a brief examination of the evidence is necessary for the purpose of determining whether it is sufficient to support the findings.

The plaintiff, Mrs. Bowers, testified that there were no papers delivered the day the deeds were executed to Mrs. Coghlan, and further testified:

"After I took the deeds to the farm I put them in a trunk and they remained there a good while with my papers; then I took them, with other papers that was made, and the will

made in April, and when I took them out I burned the other papers; I burned the will up. I took these papers and put them in a valise; I intended to read them; I never had looked at them; they were just put in the valise; my husband saw them there; I have no recollection at all as to whether they were read over to me on the day I signed them. When I had the deeds in town I kept them in a grip under my bed, back next to the wall in the house where I now live, No. 608. I first knew the deeds had been taken on the 4th of September, 1906, Mrs. Cottrell came in and told me. She sat down on the settee and says, 'Ma, I want to tell you something, but I don't want you to get mad. I took those deeds and put them on record,' and I says, 'Belle, I am mad. What did you do it for?' And she says, 'You wouldn't do it,' and I says, 'No, I never intended to, and I am mad. Go and get those papers.' I asked her a number of times to go and get those papers, and finally, she wrote me a little peace offering, a little slip of paper, telling me they were deposited in Mr. Moore's bank. I never delivered to Mrs. Coghlan, or anyone in her behalf, or for her use, nor did I authorize anyone else to deliver to her any deeds to any portion of this property described in the complaint at any time. I recollect it was on the 4th of September that she informed me she took the deeds because the morning of the 5th it came out in the papers. I asked her if it had come out, and she said, 'No, it would come out in the morning's "Statesman."' "

On cross-examination of the plaintiff, counsel for appellant asked her this question:

"For what purpose did you execute these deeds to Mrs. Coghlan? A. Well, just the same as I signed a will while I was at her house, she thought I would die, that is the truth of it, and she wanted it fixed so she could manage it.

"Q. What was your object in giving this property? A. I suppose I thought it would be best to let somebody manage it.

"Q. You knew what you were doing and signed it for that purpose? A. They talked me into it; yes, sir.

"Q. That was the reason then; you did know what you were doing then at the time you signed it? A. That is what I said.

"Q. I am asking why you did it, what you did it for, what reason did you have to deed this property to Mrs. Coghlan? A. That was the reason.

"Q. And that was the reason you had in your mind at that time, at the date you signed them? A. Yes.

"Q. So she would have the property in case of your death? A. Well, she would look after it, didn't put it in case I died, that wasn't inserted in that, any of it.

"Q. No, that is true. A. She talked to me a great deal with reference to this as well as the will made in her house the same date the deeds are dated.

"Q. When was the will made? A. In April, or the first of May, somewheres along there.

"Q. You kept the will in your possession. A. I did until I burned it up.

"Q. When did you burn it up? A. I burned it up last year, I couldn't say just when I burned it up, it was before we brought these other papers in from the ranch, yes. I destroyed the will before I came in from the ranch. I intended to read these over but I never read them; never opened them. I never read the will—he read it to me. I intended to destroy these deeds but didn't do it in time. When I was on the farm my husband came in and said: 'Why don't you destroy the deeds?' I had it in my mind I would destroy the deeds but I didn't do it. I think the deeds were taken from me on or about the last day of August; on the 4th day of September, I was informed of it, and went and looked and they were gone. On the 4th day of September my daughter said she took them and put them on record. I asked her what she had done with the papers she made to me, and I told her to go and get them. She said she had taken care of them. About the next day, the 5th, I told my husband that she had placed the deeds on record. She told me on the 4th that I would see it in the paper in the morning, the recording of the deeds."

She further testified on cross-examination that she had Mr. Dunbar, an attorney, go to the courthouse and examine the record in the case of the Bank of Commerce and see whether the appeal had been taken, but she could not remember the time, but that he reported the appeal would expire on September 7, 1906.

T. A. Dowd, a witness for the plaintiff, testified that when called to the premises by the defendant, he was asked by her to have a tenant removed therefrom, and that the defendant told him that she had an attorney advise her to get possession of the deeds.

Mr. Bowers, one of the plaintiffs, testified that he remembered the execution of the deeds in June, 1905; that there were several deeds made out, conveying property to Mrs. Coghlan, and there were deeds made out conveying the same back to Mrs. Bowers from Mrs. Coghlan; that after the deeds were signed they were handed back to Mrs. Bowers in her own house, and she had them in her possession a good while and out on the ranch a good while; he saw them several times; that he was never present when the deeds were delivered to Mrs. Cottrell.

The defendant testifies that on June 15, 1905, the Bank of Commerce had issued a writ of attachment and brought it to her house to be served upon her mother, the plaintiff.

"I told my mother, the plaintiff, about this paper being brought there. Then she said right away, 'I wish I had made deeds at the time I made the will, for the will is no good.' I acquiesced to it and said it would be better, and she said, 'I believe I will have the deeds made yet, for I haven't seen that paper. It has not been served on me.' I stepped to the 'phone and called for Mr. Jackson to make the deeds. He was a long time coming, so she suggested Mr. Messersmith. I 'phoned Mr. Messersmith to come right up, on the afternoon of the 15th of June. She had me look over papers for the description. Mr. Messersmith took the description and went away. I wanted to know if he couldn't have them ready that afternoon. My mother stated she wanted them dated the 28th of April, the same time a deed was made to

my nephew, and they were so dated. I was interested, because I thought if we could get the property on record before there was any suit commenced she could save the property from being involved in this fight with the Bank of Commerce. I knew what was the reason it was being done, and she knew. She said she guessed it would be all right, as long as the deed was dated back to the 28th of April. Mr. Bowers came in that evening, and she spoke to him about what was done and he acquiesced in it. The deed . was brought up on the 16th by Mr. Messersmith and executed and he gave them to my mother. My mother told me what she was doing this transferring for. We talked it over, to keep the Bank of Commerce from getting it in case they won the case. She knew at that time she had been sued. I told her that the writ had been left at my house for her. The first time I got possession of those deeds was perhaps the same day or the next after they were executed. My mother told me where they were, in a certain drawer, and I got them; I had them in my possession a few days, perhaps, before I returned them back to Mrs. Bowers; the next time I had them in my possession was about the first of September, 1906; my mother gave them to me; she wanted me to take them up and put them on record. At that time I remember about her sending for Justice of the Peace Dunbar, to see the records in regard to the Bank of Commerce suit. . . . . The same day I told her I had put them on record she said something about the papers I made to her, and I says, 'They are over home,' and she said, 'I want you to give them to me.' I says, 'I don't know why I should give them to you, the record is in my name'—I knew her disposition if she got angry; I didn't give them to her; she insisted on my giving her the papers that I had executed to her, but I wouldn't; I said, 'Why do you want them? What do you care for them for?' She said, 'I feel as though you may turn me out of my home if you want to.' I said, 'Ma, you know I wouldn't do such a thing as that.' She said, 'Supposing you should die; how about the children?' And it struck me right away that was right and I ought to pro-

vide some way for her. I told her, 'I will tell you what I will do—I will put them in the bank and you can call and get them in case I die.' I didn't know whether I would live any longer than she or not, and I wanted to make her feel that I was doing what was right and carry out her wishes to the best of my ability, and I did take them down that afternoon to the First National Bank, came back and wrote that order, put my name to it, and took it to her; and she was perfectly satisfied.''

The order is as follows:

"Boise, Idaho, Sept. 7, 1906.
"Mr. C. W. Moore, President First National Bank:

"Please deliver to my mother, Sarah A. Bowers, after my death, not before, papers placed in said bank for safekeeping, according to instructions.

"Mrs. MAY BELLE COGHLAN."

"She knew I took the deeds to have them recorded. I never told Dowd that my mother did not know I had gotten possession of the deeds. I did have a little conversation with Dowd about the last of October, but it wasn't in regard to the deeds.''

On cross-examination she testified that, notwithstanding the pendency of this Bank of Commerce suit, the plaintiff retained the deeds in her possession until September, 1906. There was nothing on record showing the property had been conveyed to anyone else; the property stood on record in her name all this time.

"She gave me those deeds the first of September, Saturday afternoon, 1906, for me to put them on record. I didn't see where she got the deeds out of—I suppose a drawer or package; she went behind the curtain and got the deeds, all six of them; she gave all six deeds; the deeds that was made to me to put on record; they were simply in a package and she told me to put the ones made to me on record. I don't know for what purpose she gave me the deeds I executed to her; she didn't tell me; I took them because they were in the bunch. . . . . I didn't return them to my mother because I didn't want to; I thought I had just as much right

to them as she had to hold them in her possession. I thought my mother was a little liberal to others of the family, to my brother, George Baldwin, and when I got possession of the deeds I decided to retain them all. . . . . I wanted to keep them myself. I didn't think it the proper thing to go before the public, for the property was in my name, if she would get upset about anything she would put them on record and people would know it was to defraud the Bank of Commerce; I didn't wish anything done with them; my mother didn't have a right to them after she gave them to me; the deeds I executed to her she didn't have a right to until I died. There was nothing said about my death at the time these deeds were executed. . . . . The deeds which I made out to my mother, after I got possession of them, I put them in the First National Bank; they remained there until the 9th or 10th of November. I went and got them and kept them for a little while, a week or so. Nobody authorized me to destroy them. Mrs. Bowers, the plaintiff, didn't give her consent to destroy them. They had been in her possession at one time for over a year; when I got possession of them I put them in the bank.''

Moody testified that the defendant consulted him about the advisability of recording certain deeds the last of August or the first of September, 1906. This, in brief, is the evidence with reference to the execution and delivery of the three deeds from Mrs. Bowers to the defendant, and the three deeds from the defendant back to Mrs. Bowers for the same property.

After the defendant filed for record the three deeds from plaintiff to her, the recorder discovered that there was an error in one deed, by reason of the failure to name the block of ground in which the lots were situated; and that such deed, by mistake, was taken from the office of the recorder with some other papers by a stranger, and the recorder ascertaining that fact, went to Mrs. Bowers and her husband with a new deed drawn in the form of the former deed, with the number of the block inserted, and stated to Mrs. Bowers and her husband that the same was for the purpose of correcting an error in a former deed. The recorder was not requested

to perform this service by the defendant, and did not inform her of such fact, and only asked plaintiffs to execute the same for the purpose of correcting the mistake in the former deed.

From this evidence, it clearly appears that the deeds signed by plaintiff were never delivered to the defendant with the intention on the part of the plaintiff to pass title to said defendant; that, after the execution of said deeds, the plaintiff retained possession of the same; that they were taken from her possession without her knowledge and without her consent; that she never intended to hand the deeds over to the defendant, and, in fact, never did hand the deeds over to defendant with the intention that the title should thereby vest in the defendant. There is much evidence in the record which tends to show that the deeds were executed at the earnest solicitation of the defendant with the view of vesting title in her, for the reason that she apprehended that other heirs had received or would receive a greater share of the plaintiff's property than this defendant. This question is strengthened by the conduct of the defendant after she secured possession of the deeds. She admits that she executed deeds conveying the property back to the plaintiff and that she destroyed the same without placing them of record and without the plaintiff's knowledge or consent. Her motive is suspicious, at least, and would seem to indicate that the thought of executing the deeds from plaintiff to defendant originated with the defendant, and was in furtherance of her design to secure title to the property of the plaintiff in anticipation of her early death, and thereby gain an advantage over the other heirs.

Viewing the evidence in its strongest light for the defendant, it shows no more than that the deeds signed by the plaintiff were conditional upon the defendant's reconveying the same property to the plaintiff. This transaction was never completed; title never passed. The plaintiff never had any intention of vesting title in the defendant, for the purpose of having the same remain there. At most, the plaintiff intended as a part of the transaction that the defendant

should immediately reconvey said property to the plaintiff. This was never done.

It also appears to have been the purpose of the defendant that by said conveyance the Bank of Commerce would be defeated in collecting any judgment that might be obtained against the plaintiff. The suit, however, of the Bank of Commerce against the plaintiff was used by the defendant as a threat to induce the plaintiff to make such deeds. And, after this threat was successful and the deeds were executed, and the plaintiff required a reconveyance to her of the same property, and the object of the defendant was in danger of being thwarted, the defendant, to accomplish her design and make successful her plans, purloined the deeds from plaintiff to the defendant from the possession of the plaintiff without her knowledge or consent, and placed the same on record, and destroyed the deeds from the defendant to plaintiff.

Let us again recur to the testimony of the defendant and see the scheming and cunning with which she acted in this matter, and the clear motive and purpose which induced her to secure the deeds from her mother and place them upon record, and destroy the other deeds from herself to her mother. She says:

"She gave me all six deeds; the deeds that was made to me to put on record; they were simply in a package, and she told me to put the ones made to me on record. I don't know for what purpose she gave me the deeds I executed to her; she didn't tell me to do anything with those; they were with the others; I took them because she handed them to me. . . . . I didn't return them to my mother because I didn't want to; I thought I had just as much right to them as she had to hold them in her possession. I thought my mother was a little liberal to others of the family, to my brother, George Baldwin, and when I got possession of the deeds I decided to retain them all."

This evidence discloses why the deeds were executed and recorded, and why they came into the possession of defendant. It was clearly the purpose of defendant to defraud her

mother out of this property, and the effect the transfer might have on the Bank of Commerce was a mere incident.

We decline to give judicial indorsement to the reprehensible conduct of the defendant and the violation, as shown, of that relationship of trust and confidence which should exist between daughter and mother. The trial court was clearly right in its findings, and the evidence clearly supports such findings. (Rev. Stat., sec. 4824, as amended by the Laws of 1907, p. 483.)

Counsel for appellant argues that, because the plaintiffs executed a deed to correct an error after the defendant had placed the deeds on record, it was an admission on their part of the delivery of said deeds and a ratification of the acts of the plaintiff in executing and delivering said deeds.

Mr. Cuddy, county recorder, testified as follows:

"No one requested me to go around to Mrs. Bowers and get her to sign the deed for those four lots in block 55. I felt responsible for the missing deed and considered it my duty to replace it. Nobody told me to insert 'block 55' in that deed. I took it upon myself to correct a deed which involved a taking in of this valuable property on Bannock street, but I explained it to her. I had the deed prepared by my instructions, and in that I inserted something which was not in the deed which had been lost, without being requested by anyone; and without the knowledge of Mrs. Coghlan, or anyone representing her; I went around and obtained the signature of Mr. and Mrs. Bowers to this deed; I first explained fully. Mrs. Coghlan didn't know I was going to do this. I was acting on my own responsibility when I went around there and secured Mrs. Bowers' signature to this deed; I brought it back with me and filed it in the recorder's office. I made the entry 'Deed Withdrawn' when I brought the other one back. Mrs. Coghlan gave me no authority to withdraw the deed."

It will thus be seen that the latter was executed as a matter of form without any knowledge of the defendant and without her acceptance of the same. The former deed being void, and the latter deed being executed to correct an er-

ror and not for the purpose of conveying title, does not amount to a ratification of the same or pass title thereto. The latter deed did not become a deed without acceptance. (*Davenport v. Whistler & Shields,* 46 Iowa, 287; *Barr v. Schroeder,* 32 Cal. 609; *Best v. Brown,* 25 Hun, 223.)

It is next argued that the judgment should be reversed because the court failed to find upon the affirmative defense. The court finds there was no delivery of the deeds signed June 16, 1905. If there was no delivery, there was no conveyance. If there was no conveyance to defendant, then the general rule, "that a court of equity will not grant relief to the person who has made a deed to defraud creditors," does not apply, and the defense fails. To withhold the relief asked for by plaintiff, on the ground plead in the answer, it is not enough that the deeds were signed with a fraudulent intent. Until the deeds were delivered no title passed. If no title passed, and still remained in plaintiff, the plaintiff's creditors could not be defrauded. The vice is not alone in the intent to do the act, but in making the conveyance with the intent.

The finding of the court, that the deed was never delivered, precludes the idea of a conveyance to defendant, and made it unnecessary to find that the conveyance was not made with intent to defraud plaintiff's creditors. The findings made disposed of the merits of the case, and are inconsistent with the defendant's case, and in effect are against the defendant on the issue tendered by the answer. The defense urged in this case is wholly inconsistent with the finding of the court, and the court's finding as to a nondelivery of the deeds is a complete negative of the case plead in the answer. The rule, as we understand it, is, that, where the findings of the court upon the affirmative case are necessarily a complete negative of the case as plead by the answer, such findings are sufficient. (*Fox v. Haarstick,* 156 U. S. 674, 15 Sup. Ct. 457, 39 L. ed. 576; *Haarstick v. Fox,* 9 Utah, 110, 33 Pac. 251; *Brison v. Brison,* 90 Cal. 323, 27 Pac. 186; *Maxfield v. West,* 6 Utah, 327, 23 Pac. 754; *Maynard v. Locomotive etc. Assn.,* 14 Utah, 458, 47 Pac. 1030; *Kisling v. Shaw,* 33 Cal. 425, 91 Am. Dec. 644; *Malone v. Del Norte Co.,*

77 Cal. 217, 19 Pac. 422; *Himmelman v. Henry,* 84 Cal. 104, 23 Pac. 1098; *Snelgrove v. Earl,* 17 Utah, 321, 53 Pac. 1017.)

As said by the supreme court of the United States in *Fox v. Haarstick, supra:*

"If, then, those findings are to be accepted as justified by the evidence, it is difficult to say how the defendant was injured by the failure of the court to pass, in express terms, on those averments of the answer now urged. . . . . In other words, the plaintiff's affirmative case is wholly inconsistent with the truth of the defendant's case, and the conclusive establishment of the truth of the former is necessarily a complete negative of the case asserted by the defendant."

So in this case, the court having made specific and definite findings upon the case, as made by plaintiff, that the deeds in question were never delivered to the defendant, which findings are inconsistent with the defense set up in the answer, and are conclusive as to the plaintiff's right to recover, the findings are sufficient. (*Brown v. Macey,* 13 Ida. 451, 90 Pac. 339; 2 Spelling's New Trial and Appellate Practice, 594.)

The judgment is affirmed. Costs awarded to respondent.

Sullivan, J., concurs.

AILSHIE, C. J. I concur in the conclusion that the judgment must be affirmed.