(February 2, 1912.)

LESTER SEAWELL and LILLIAN M. SEAWELL, Appellants, v. PACIFIC & IDAHO NORTHERN RAILWAY CO., Respondent.

[121 Pac. 556.]

ACTION ON CONTRACT—FRAUDULENT MISREPRESENTATION—EVIDENCE.

(Syllabus by the court.)

1. In an action on an agreement of compromise and settlement of differences and disputes, where a defense is made that the agreement was entered into by the defendant relying upon certain false and fraudulent statements that were made by the plaintiff at the time of entering into the contract, and that the plaintiff knew such statements were false and fraudulent and that the defendant, not knowing of the falsity of such statements, relied and acted upon them, the evidence is sufficient to sustain and support a verdict in favor of the defendant.

2. Evidence examined in this case and *held* sufficient to support the verdict and judgment.

APPEAL from the District Court of the Seventh Judicial District for Washington County. Hon. Ed. L. Bryan, Judge.

Action on contract. Judgment for plaintiffs for a part only of the sum demanded, from which plaintiffs appeal. *Affirmed.*

Feltham & Ryan, and Perky & Crow, for Appellants.

Heigho, in view of his official relation to the respondent corporation, the approaching settlement, and his increased responsibility to the respondent which such settlement imposed, was under the duty to inquire into the records of this shipment, in order that he might be prepared to safeguard the interests of his company in that settlement. (*Dambmann v. Schulting*, 75 N. Y. 61; *Cleaveland v. Richardson*, 132 U. S. 318, 10 Sup. Ct. 100, 33 L. ed. 384; *Pattison v. Albany Bldg. & Loan Assn.*, 63 Ga. 376.)

The respondent company was at no disadvantage as to means of knowledge. The way-bills, shipping contracts and reports upon which it relied were of its own making and in its possession. (*Hennessy v. Bacon*, 137 U. S. 78, 11 Sup. Ct. 17, 34 L. ed. 605; *College Park etc. Belt Line v. Ide*, 15 Tex. Civ. App. 273, 40 S. W. 66; *Fishkill Savings Inst. v. Nat. Bank*, 80 N. Y. 168, 36 Am. Rep. 595.)

False representations are not actionable unless the purchaser has been fraudulently induced to forbear inquiry as to their truth. (*Brown v. Bledsoe*, 1 Ida. 749.)

Richards & Haga, and Frank Harris, for Respondent.

Any false representation of a material fact, made with knowledge of its falsity and with intent that it shall be acted upon by another in entering into a contract, and which is so acted upon, constitutes fraud, and will entitle the party deceived thereby to avoid the contract or to maintain an action for the damages sustained. (9 Cyc. 411, D. 2, and cases cited

under note 71; *Hanscom v. Drulard,* 79 Cal. 234, 21 Pac. 737.)

Where false statements as to quantity are made for a fraudulent purpose, the one who relies upon them will not be denied a recovery because he acted upon the representations without measuring. (*Ledbetter v. Davis,* 121 Ind. 119, 22 N. E. 744; *Baker v. Lever,* 67 N. Y. 309, 23 Am. Rep. 117.)

### STATEMENT OF FACTS.

On the 18th day of September, 1908, Lester Seawell and Mrs. Lester Seawell shipped a band of sheep from Evergreen, Idaho, over the Pacific & Idaho Northern Railroad Company's line of road, and the train conveying the sheep was wrecked between Evergreen and Weiser, and a number of sheep were killed, maimed and injured. Seawell was with the train but refused to assume charge of the sheep or have anything to do with them at the time of the wreck, and the railroad company cared for them and after the wreck was cleared away transported them to Weiser. The sheep were held at the latter place, pending a settlement between the shippers and the railroad company, and in the meanwhile some of them got out of the corrals and were killed and injured by trains on the Oregon Short Line road. On the night of September 22d, or, rather, sometime between 11 o'clock that night and 1 or 2 o'clock the following morning, an agreement was entered into between the shippers and the company which contains the following introductory recital:

"Whereas, on the 18th day of September, A. D. 1908, Lester Seawell and Mrs. Lester Seawell shipped 4758 head of sheep over the Pacific and Idaho Northern R. R. Co., which said sheep were shipped under the names of said parties and of other parties, and consigned to said parties and other parties, and whereas, the train conveying said sheep was wrecked on the line of said railroad company, and a portion of said sheep killed, maimed and lost by reason of said wreck, and whereas, a number of said sheep were killed, maimed and injured in the vicinity of Weiser, Idaho, and whereas, the said Lester Seawell and Mrs. Lester Seawell claim damages from

said railroad company by reason of the occurrences herein-before recited, and whereas, the said railroad company have disclaimed any liability for damages arising from said acts and occurrences, and whereas, said railroad company and Lester Seawell and Mrs. Lester Seawell desire to settle said controversy without a resort to litigation, in consideration of the premises it is agreed by and between the aforementioned parties to said controversy that the same be compromised as follows, to wit:''

The foregoing recital is followed by the terms of the contract which provide in effect that the railroad company shall turn over to the shipper all sheep that are sound and would pay to the shippers the sum of ten cents per head on all sheep turned back to them as compensation for shrinkage, and that it would pay to the shippers the ''current price in Weiser, Idaho, for all sheep killed, crippled or missing.'' The contract further provided that the delivery should be made on the following day, September 23d, and that the company's employees should remain in charge of the sheep until such time as the delivery was fully made and completed in order to enable it to ascertain the number turned back and the number killed, injured and missing. The sound sheep were accordingly delivered to the shippers on the 23d, and the shippers thereupon demanded payment for a number of sheep representing the difference between the number turned back and the number they claimed had been shipped, aggregating 4,758 head. The number claimed by appellants represented a shipment of sixteen cars,—fifteen cars carrying 300 head each and the sixteenth car carrying 258 head. The company's manager declined and refused to pay for that number and claimed that, on the contrary, the shippers had only delivered to the company 4,458 head and that the shipment consisted of only fifteen cars. There was consequently a difference between the shipper and the carrier of one full carload of sheep, and they were unable to agree on the number, and this action was accordingly instituted.

The shipper sued upon the contract of settlement of September 22d and the railroad company defended to the extent

of the number of sheep represented by one carload of 300
head on the ground of fraud and misrepresentation on the
part of the shipper made at the time the agreement was en-
tered into. The company claimed that the contract was en-
tered into at the office of the shipper's attorneys at a late
hour of the night when its offices were closed and its records
and files were not available or accessible, and that the recital
in the contract as to the number of sheep shipped was ac-
cepted and made wholly upon the representation of the ship-
per, and that the company's agent and manager relied upon
such statement as being true and correct at the time it was
made, whereas in truth and fact it was false and fraudulent,
and that the shipper knew of such fact at the time he made
such representation and at the time the contract was executed:
The evidence disclosed that the sheep were not all shipped in
the name of the owners, Mr. and Mrs. Seawell, but that only
about seven or eight cars were shipped in their names and
the balance in the names of other persons called "dummies."
The evidence also disclosed that the agent at Evergreen had
issued to the Seawells sixteen bills of lading, or "livestock
contracts," as they are designated on their face, while he had
only made out fifteen way-bills. Way-bill No. 117 covered
O. S. L. car No. 13,798, and was consigned to "Lester Seawell,
Chicago." The evidence on the part of the railroad company
showed, however, that the agent at Evergreen issued two bills
of lading or livestock contracts on O. S. L. car No. 13,798,
one to Lester Seawell and the other to Mrs. Lester Seawell.
These contracts were introduced in evidence, and while the
Seawells held contracts or bills of lading for sixteen cars, it
appears upon the face of their contracts that O. S. L. car No.
13,798 had been covered by both contracts and that the con-
tracts duplicated this one car. (O. S. L. No. 13,798.)

The court submitted to the jury a list of questions upon
which they made special findings. The questions submitted
and the answers given thereto by the jury are as follows:

"First: How many cars of sheep did the plaintiff ship over
the road of the defendant on or about the 20th day of Sep-
tember, 1908? Answer: 15.

282        Seawell *v.* Pacific etc. Ry. Co.        [21 Idaho,

Statement of Facts.

"Second: How many sheep were placed in each car? Answer: 300 each in 14 cars, 258 in one car.

"Third: Did the plaintiff Lester Seawell at the time the contract in evidence herein was made state to the general manager of the defendant corporation that he had shipped over the defendant's road 4,758 sheep? Answer: Yes.

"Fourth: If the answer to No. 3 is in the affirmative, was such statement true or false? Answer: False.

"Fifth: If you answer Question No. 3 in the affirmative, did the manager of the defendant corporation rely upon the said statement of the plaintiff Seawell as to the number of sheep shipped, and were the statements of the said Seawell the procuring cause of the signing of the contract by the manager of the defendant corporation, which contract has been introduced in evidence? Answer: Yes.

"Sixth: Did the plaintiff Seawell at the time of entering into the agreement and contract which has been introduced in evidence state to the manager of the defendant corporation that he had shipped 16 cars over the line of the defendant corporation? Answer: Yes.

"Seventh: If the answer to No. 6 is in the affirmative, was this statement true or false? Answer: Yes, false.

"Eighth: How many sheep belonging to plaintiff including the sheep which Mack Hand and the plaintiff Lester Seawell, both testify were furnished by said Mack Hand to said Lester Seawell to fill up the last car loaded by plaintiffs, were delivered by plaintiffs to the defendants on or about the 20th day of September, 1908? Answer: 4,458.

"Ninth: At the time the sheep referred to in the foregoing question were loaded, did the said Lester Seawell count the said sheep? Answer: Yes.

"Tenth: How many cars were unloaded after the wreck on the 20th day of September, 1908, at the place where the wreck occurred? Answer: One.

"Eleventh: Had the defendant company at the time that it executed the agreement mentioned in the last question in its possession or in the possession of its officers, or any of them, the data from which it could have secured with the exer-

cise of reasonable diligence full information about the shipment made by plaintiffs on September 20, 1908? Answer: No. David Donnan, Foreman.''

Upon these findings by the jury the court entered judgment for the plaintiffs for the amount claimed, less 300 head or one carload. The plaintiffs have appealed from the judgment.

AILSHIE, J. (After stating the facts.)—There was a substantial conflict in the evidence, and the findings of the jury thereon are consequently conclusive. (Sec. 4824, Rev. Codes; *Snowy Peak etc. Co. v. Tamarack etc. Co.,* 17 Ida. 644, 107 Pac. 60; *Eaves v. Sheppard,* 17 Ida. 268, 134 Am. St. 256, 105 Pac. 407; *Bowers v. Cottrell,* 15 Ida. 221, 96 Pac. 936; *Roseborough v. Whittington,* 15 Ida. 100, 96 Pac. 437; *Lamb v. Licey,* 16 Ida. 664, 102 Pac. 378.)

Appellants place their principal reliance for reversal, however, upon the proposition that this is an action on an agreement of settlement of a disputed claim, and that the parties were dealing at arm's-length and that there is no competent evidence of any fraud being practiced or misrepresentation being made by the appellants in procuring this contract, and that the defense of fraud and misrepresentation has not been established. That contention is met by at least two valid and insurmountable objections in this case. In the first place, while the contract and agreement of settlement enumerates and sets forth the number of sheep which the shippers delivered to the carrier, still it does not appear that there had been any real controversy between the parties as to the number of sheep shipped, but the vital question in dispute was the amount of compensation to be received and whether the shipper would accept the sheep from the carrier at Weiser and receive compensation for the loss sustained by reason of the delivery and consequent shrinkage. In other words, it does not appear that the settlement primarily involved a dispute over the *number of sheep shipped.*

In the second place, the settlement was made without the company's agent consulting the records kept by the company

and apparently upon the word of the shipper as to the number actually shipped. While the shipper would ordinarily be presumed to know the number of stock he had delivered to the carrier, the carrier, on the other hand, would have no adequate method of knowing the number received except from its records. And, lastly, the company showed diligence and good faith in ascertaining the number shipped and the fraud and misrepresentation, and apparently within less than twelve hours after the signing of this agreement it brought the matter to the attention of the shipper and demanded a correction of the mistake that had been made. The evidence was abundant to justify the jury in their findings.

There is clearly nothing in this record which indicates a miscarriage of justice. The jury have heard all the evidence in the case and have seen all the witnesses and have found against the appellants on every question. When a jury find in such a case as this in favor of a railroad company, it is fairly safe to conclude that the evidence was ample and of the most convincing character, and, as it appears in the record here, it is clear to us that they committed no error in this case.

The judgment should be affirmed, and it is so ordered. Costs awarded in favor of respondent.

Stewart, C. J., and Sullivan, J., concur.