Tisher vs. Beckwith and others.

## TISHER vs. BECKWITH and others.

STOLEN DEED. (1.) *Stolen deed does not pass title.* (2.) *Grantor's negligence may work an estoppel.* (3.) *Evidence of negligence.* (4.) *Grantor not estopped if deed is not executed.*

1. A deed purloined from the grantor, or obtained from him fraudulently or wrongfully, without his knowledge, consent or acquiescence, does not pass the title, even as against a subsequent purchaser for value without notice.
2. The person named as grantor in the deed may, however, be guilty of such a degree of negligence in executing it and permitting it to be exposed where it may readily be taken by the person named as grantee, as will *estop* him from setting up title as against a *bona fide* purchaser for value under the deed.
3. Where one left a deed running to his son in a trunk easily accessible to the son, and in which the latter also kept his papers, this would perhaps have been evidence tending to show negligence that might create such an estoppel, in case the deed had been fully executed and ready for delivery.
4. But where it appears that the deed was not fully executed, and that it was unstamped, so that the son could not avail himself of it without committing forgery as well as theft: *Held*, that there is no estoppel.

APPEAL from the Circuit Court of *Waupaca* county.

Action against defendants, together with the sheriff and former sheriff of Waupaca county, to restrain said officers from executing a deed of certain mortgaged premises sold under a judgment of foreclosure to the defendants, and to compel defendants to convey to respondent their title acquired under such sale.

It appeared in evidence that the plaintiff, *Tisher*, who was in possession of the premises in dispute as a homestead under a patent from the United States, had partially executed but never delivered a deed of the premises to his son Charles H. Tisher. This deed, which was unstamped and bore no consideration or date, was placed by *Tisher* in a trunk and locked up, the key being kept by his wife in a small box in another trunk which was locked. The son kept his papers in the same trunk in which the deed was placed, but had no key. Defendants claimed the premises under a sale by virtue of a judgment of foreclosure of certain mortgages executed by the said Charles H. Tisher. The court found as facts that the pretended deed of *Tisher* to his son was never fully executed and delivered, but that it was purloined from *Tisher* without his knowledge or consent, and that the defendants had due notice of the plaintiff's claim to the premises, as well as his son's inability to convey. As a conclusion of law the court found that *Tisher* was the owner in fee of the premises; that the pretended deed to his son was null and void; that the mortgages executed by the son were null and void, as well as the certificate of sale issued to defendants under the foreclosure sale; that the sheriffs should be enjoined from executing a deed on said certificate; that the defendants should be restrained from disposing of the certificate, and that they should release to the plaintiff all claims to the premises in question by virtue of said sale and certificate. Judgment being entered in accordance with such findings defendants appealed.

*Felker & Weisbrod*, for appellants, contended, among other things, that although the deed from *Tisher* to his son might never have been delivered, having been stolen or purloined

from him, a *bona fide* purchaser for valuable consideration and without notice would still take a good title. *Collins v. Heath*, 34 Geo., 443; *Jones v. Powles*, 3 Myl. & K., 581, 595; 1 Story's Eq., §§ 434, 436.

*E. L. Browne, contra*, argued that the deed, being neither stamped, executed nor delivered, was invalid, citing *Cooper* et al. *v. Jackson* et al., 4 Wis., 537; *Everts v. Agnes* et al., 6 Wis., 453. The deed being stolen or fraudulently obtained by Charles H. Tisher, under whom appellants claimed, neither he nor his grantee or mortgagee could acquire any right or interest in the property, even though the grantee or mortgagee were *bona fide* such. *Everts v. Agnes* et al., 4 Wis., 343.

Dixon, C. J. The fourth finding of fact by the court below is in these words: "That the pretended deed from said plaintiff and his wife to Charles H. Tisher was never fully executed and was never delivered, and that the same was purloined or stolen from said plaintiff without his knowledge, consent or acquiescence." If this finding be correct and sustained by the evidence, it obviously puts an end to all claim of title to the land on the part of the defendants. It has been held by this court that the fraudulent procurement of a deed deposited as an escrow from the depository by the grantee named therein, will not operate to pass the title, and a subsequent purchaser of such grantee, for valuable consideration without notice, derives no title thereby and will not be protected. *Everts v. Agnes and Swift*, 4 Wis., 343. Same v. Same, 6 Wis., 453. It is essential to the validity of a deed that it should be delivered, and such delivery to be valid must be voluntary, that is, made with the assent and in pursuance of an intention on the part of the grantor to deliver it, and if not so delivered it conveys no title. A deed purloined or stolen from the grantor, or the possession of which was fraudulently or wrongfully obtained from him without his knowledge, consent or acquiescence, is no more effectual to pass title to the supposed grantee, than if it were a

total forgery, and an instrument of the latter kind had been spread upon the record. The only question which can ever arise to defeat the title of the supposed grantor in such cases, is whether he was guilty of any negligence in having made, signed and acknowledged the instrument, and in suffering it to be kept or deposited in some place where he knew the party named as grantee might, if so disposed, readily and without trouble obtain such wrongful possession of it and so be enabled to deceive and defraud innocent third persons. It might possibly be that a case of that kind could be presented where the negligence of the supposed grantor in this respect was so great, and his inattention and carelessness to the rights of others so marked, that the law would on that account estop him from setting up his title as against a *bona fide* purchaser for value under such deed. See *Everts v. Agnes, et al.*, 6 Wis., 453. There are some facts and circumstances in this case strongly suggestive of such a defense, and were it not for the fact found by the court that the deed was never fully executed, and the further fact fully established in evidence that it was unstamped when put away by the plaintiff in the trunk in the manner described by himself and the other witnesses, we might possibly have some hesitation about affirming the judgment of the court below on this ground.

It appears from the plaintiff's own testimony that the trunk was easily accessible to his son, the person named in the instrument as grantee, for he says that his son, who was acting as town clerk at the time, kept his papers there, although he also testifies that the son had no key to the trunk, but that his, plaintiff's, wife kept the key in a small box in another trunk belonging to her and which was locked. A deed fully executed and which had been so kept or deposited would seem to furnish some evidence, more or less strong, of negligence on the part of the grantor. It would be unlike the case of a deed executed and deposited in escrow, which this court said was recognized as a legitimate business transaction. But the finding is that the

deed was not fully executed nor was it stamped, and the ques-
tion is, whether it was negligence so to keep such an instru-
ment, and we are not prepared to say that it was.    It occurs
to us, as it probably did to the court below, that most men of
ordinary care and circumspection would not have regarded this
as unsafe or imprudent or careless.    An instrument complete in
all its parts and lacking nothing to give it validity but delivery
to the person named in it as grantee, might excite the cupidity
of such person to take wrongful possession of it when frequent
opportunity for that purpose was afforded, but that an unfin-
ished instrument, one partially executed and not ready for
delivery, would present the same temptation would hardly sug-
gest itself to the mind of any ordinarily prudent and cautious
man.    It would hardly occur to such a man that such an instru-
ment would be purloined or wrongfully taken, when to give it
any apparent validity in the hands of the supposed grantee the
crime of forgery must also be committed. It is for these reasons
that this court is of opinion that the facts proved were not suf-
ficient to take the case out of the general rule of law above
stated, even taking the most liberal view of the facts in favor of
the defendants.    There are cases, however, the tendency of
which would seem to be that the failure of the plaintiff to sus-
pect and treat his son as a knave, thief, or criminal, could not
be attributed to him as negligence.    See the able and well-con-
sidered opinion of the court by CHRISTIANCY J. in *Burson v.
Huntington*, 21 Mich., 415, (4 Am. R., 497), a case involving
the same question with respect to the delivery of a negotiable
promissory note and which, not having been delivered by the
maker but stolen or wrongfully taken and put in circulation by
the payee, was held void in the hands of a *bona fide* holder for
value.    The same case also makes a distinction between a note
or other instrument so obtained and one deposited in escrow and
afterwards fraudulently delivered by the depositors, holding
that in the latter case the maker would be bound as against an
innocent holder for value, on the ground of the trust or confi-

dence reposed by him in the depository, and upon the principle that, when one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. Upon the same question also of negligence, see *Wait v. Pomeroy*, 20 Mich., 425, 4 Am. R. 395. It only remains, therefore, to be inquired whether the evidence given on the trial was such as to sustain the finding of the court above quoted.

We are of opinion that the preponderance of testimony was decidedly in favor of the finding. If we omit from our consideration entirely the testimony of the plaintiff, which was clear and strong and whose credibility and fairness we discover nothing to impeach, except the mere fact of his interest, the finding was fully sustained by the testimony of the witnesses, Quimby, Wooden and Mrs. Scheppe, who corroborated the plaintiff in almost every particular to which he testified. Opposed to the testimony of these witnesses was only that of the witness Hoxie, who testified merely to certain admissions and conduct of the plaintiff calculated to induce the witness to believe that the plaintiff had conveyed the land to his son. In this, Hoxie was directly contradicted by the plaintiff, and there again the plaintiff was corroborated by the witness Wooden, who was present on the occasion spoken of by Hoxie. In every view in which the testimony presents itself to our minds, we are constrained to say that this finding of the court below was correct, and consequently, that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.