[No. 19021.  Department One. — March 16, 1893.]

FREDERICK S. GOULD, EXECUTOR, ETC., RESPONDENT, v. JOHN WISE, APPELLANT.

DEED — DELIVERY — ASSENT OF GRANTOR. — Delivery is the force that vitalizes an instrument; and a deed can take no effect until delivery, which is dependent upon the assent of the grantor.

ID. — CLANDESTINE POSSESSION OF GRANTEE — NON-FULFILLMENT OF AGREED CONDITIONS — TITLE. — Where a grantee named in a deed secures possession thereof clandestinely, or in any manner without a fulfillment of the agreed conditions, or consent of the grantor to a delivery, there is no delivery of the deed, and no title passes to the grantee.

ID. — FRAUDULENT MORTGAGE BY GRANTEE BEFORE DELIVERY — MORTGAGE TO GRANTOR FOR PURCHASE-MONEY — PRIORITY. — Where an intending purchaser of land contracted with the owner thereof for its purchase, agreeing to pay part of the purchase-money in cash, and to execute a mortgage for the balance, and after the deed was signed and acknowledged, and while it was lying upon the table of a conveyancer, who was engaged in preparing the notes and mortgage, which were to be delivered contemporaneously with the deed, the purchaser took it from the room, and without the knowledge of the grantor negotiated a loan thereon from a third party, executing a mortgage therefor, and about a half-hour thereafter he returned to the grantor and signed the mortgage and notes: *held*, that the delivery was not complete until the mortgage and notes to the grantor were signed, and that the mortgage of the grantee created no lien upon the property as against the grantor.

ID. — NEGLIGENCE OF GRANTOR — ESTOPPEL — NON-DELIVERY OF DEED. — In such case the act of the grantor in allowing the deed to be removed from the room before the execution of the mortgage, even conceding it to be negligence on his part, was not such degree of negligence as to create an estoppel against him in favor of the mortgagee of the grantee without notice to prevent a plea of non-delivery of the deed to the grantee.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Willis & Appel,* and *Houghton, Silent & Campbell,* for Appellant.

*Richards & Carrier,* and *Del Valle & Munday,* for Respondent.

GAROUTTE, J. — Upon the sixth day of March, 1888, appellant, Wise, entered into an agreement with Charles O. and Asa Adams to convey to them certain land. Upon March 12, 1889, Charles Adams, one of the parties to the agreement, transferred his interest in the property to his co-purchaser, Asa Adams. On the same day, Asa Adams, having procured the deed from his co-purchaser, applied to appellant, Wise, for a deed of the premises contracted for, representing to him that he would pay one thousand dollars cash, which, together with five hundred dollars which had been paid at the date of the execution of the contract, would amount to fifteen hundred dollars paid on the purchase price, and that he would execute the mortgage provided for in the agreement aforesaid for the balance. Appellant at the time was weak and infirm from old age and sickness, and was conveyed by Asa Adams in a vehicle to the office of a notary, and there the deed and the notes and mortgage set forth in the cross-complaint herein were executed in the manner hereinafter stated. Before the payment of the one thousand dollars, Adams, without the consent of Wise, took the deed from the notary's office, presented it to R. W. Poindexter, a real estate agent who was loaning money for the deceased, Julia F. Gould, and there executed the note and mortgage set forth in plaintiff's complaint. He thereupon returned to the notary's office, where Wise was awaiting him, executed the notes and mortgage to Wise, and gave him a check for the cash payment, and Wise thereupon had his mortgage recorded. Prior to this time, Poindexter went to the recorder's office, recorded the deed from appellant to Adams, and also the mortgage given to plaintiff. Ap-

pellant was ignorant of the transaction between Adams and Poindexter, and had no notice whatever concerning plaintiff's mortgage. When respondent's mortgage became due, he commenced this action, and impleaded therein appellant, Wise, who answered, and filed his cross-complaint seeking to foreclose his mortgage, and claiming that it was prior and superior to plaintiff's mortgage.

The sole question involved in this case arises as to the relative priority of these respective mortgages. Upon the trial, judgment went for the respondent, and this appeal is prosecuted from that judgment, and from the order denying a new trial.

We will not enter into a discussion of the question whether the contract of sale constituted an equitable mortgage lien of which the respondent had constructive notice, and which continued down to and merged in the mortgage made to Wise under the provisions of his contract. The case can be disposed of, and therefore should be disposed of, upon much more simple grounds.

At the time respondent loaned the money and took the mortgage as security for the loan, Adams had no title to the land, and as a necessary consequence respondent got no security for the money loaned. This view of the matter is not directly presented in appellant's argument, but it goes to the heart of the case, and is so apparent from a reading of the evidence that we cannot avoid its consideration. Appellant gave the only evidence bearing upon this branch of the case, and his testimony was as follows: " I am eighty-three years old; I was sick on the 12th of March, and Adams came to my house in a buggy; he had a deed for my property with him, ready; he got me to sign it in the wagon; then he took me to a place to give a mortgage. He was to give me one thousand dollars, and a mortgage and notes for the balance. He hurried me up, so that he could get the money out of the bank before it was closed. A man came out of a door with a pen and ink, and swore me, and I signed the deed. Then Adams drove off, and took me to another place. He had spoke to a man to

make out the mortgage, and he staid there a little bit, and the man was making out the mortgage and writing it up; I thought I was to have the first mortgage. He says, 'Let me see that deed.' He got the deed and cleared out with it; I didn't like it very good; I hadn't got no mortgage yet, and he left the mortgage and these notes laying there. He was not gone more than half an hour. He didn't leave the notes and mortgage with anybody,—left them laying where the man was writing them. When he came back, we drove to the court-house, and I recorded my mortgage. He gave me a check for seven hundred dollars, and paid me most of the balance of the one thousand dollars afterwards in small sums. The deed laid on the table, and he says, 'Let me see that deed.' He reached over and pulled it away. I did not think he was going away, but he was gone. He signed the mortgage and notes when he came back, and gave me the check then."

This evidence, sifted of immaterial matters, discloses that after the deed was signed and acknowledged, and while lying upon the table in the presence of both parties, it was taken therefrom by Adams, who thereupon left the room with the deed in his possession. At that moment, the conveyancer was engaged in preparing the notes and mortgage which formed the principal consideration for the deed, and which were to be delivered contemporaneously with the deed. Upon this state of facts, it is apparent that no delivery occurred at the time Adams obtained possession of it, and that, as a consequence, no title was in him at the time he negotiated the loan, and no mortgage lien was secured upon the realty by the mortgagee at that date, as against the grantor, Wise. Delivery is the force that vitalizes the instrument. Here there was no life in the instrument, because there was no delivery. Delivery is dependent upon the intention, the consent of the grantor, and here there was an entire absence of intention to make a delivery until the notes and mortgage were also delivered. The respective acts of the grantee and grantor as to the

delivery of the deed and the securities were to be con-
current. The delivery of the deed was dependent upon
the assent of the grantor, and his assent was dependent
upon the performance of acts by the grantee. The
grantee's possession of the deed upon any other terms
or conditions was against the assent of the grantor, and
for that reason the instrument had no life. This prin-
ciple is elementary, but is fully discussed in *Everts* v.
*Swift*, 4 Wis. 343; 65 Am. Dec. 314; *Henry* v. *Carson*,
96 Ind. 412; *Fitzgerald* v. *Goff*, 99 Ind. 28; *Jones* v. *Love-
less*, 99 Ind. 317.

Again, it has been repeatedly held that the fraudulent
procurement of a deed deposited as an escrow from the
depositary by the grantee named therein will not oper-
ate to pass the title, and the subsequent purchaser from
such grantee, without notice, and for a valuable consid-
eration, derives no title thereby, and will not be pro-
tected. (*Everts* v. *Swift*, 6 Wis. 453; *Shirley* v. *Ayres*, 14
Ohio, 308; 45 Am. Dec. 546; *Stanley* v. *Valentine*, 79 Ill.
544; *Harkreader* v. *Clayton*, 56 Miss. 383; 31 Am. Rep.
369; *Henry* v. *Carson*, 96 Ind. 412; *Tisher* v. *Beckwith*,
30 Wis. 55; 11 Am. Rep. 546.) The foregoing cases are
conclusive to the effect that if a grantee secure posses-
sion of a deed clandestinely, or in any manner without
a fulfillment of the agreed conditions, there has been
no delivery with the assent of the grantor, and there-
fore no title has passed.

These principles of law being established, there is
nothing remaining to defeat appellant's rights in the
premises, unless he was guilty of such negligence in
allowing the deed to be taken from his presence and
from the room as to create an estoppel against him in
favor of respondent as an innocent third party, and we
think no such state of facts is disclosed by this record.
The principle of equity that where one of two innocent
persons must suffer by the act of a third, he who has
enabled such third person to cause the loss must bear
it, is entirely too broad in its scope to be invoked in
this character of action. That principle is specially

applicable where the loss has been occasioned by reason of a trust or confidential relation having existed, to some extent at least, toward the third party. But we have failed to find a case where an estoppel has been successfully pleaded under the circumstances here presented. To create an estoppel against the grantor in this character of action, if one can be created, requires the proof of that degree of negligence upon his part which could only result from the want of ordinary care. As was said in the case of *Burson* v. *Huntington*, 21 Mich. 436, in discussing this principle with reference to the delivery of a promissory note: "The maker, therefore, cannot be held responsible for any negligence. There was nothing to prove negligence, unless he was bound to suspect and treat as a knave, a thief, or a criminal the man who came to his house, apparently on business, because he afterwards proved himself to be such. This, we think, would be preposterous."

In *Tisher* v. *Beckwith*, 30 Wis. 55, 11 Am. Rep. 546, Chief Justice Dixon, in speaking to this subject, said: "It might possibly be that a case of that kind could be presented where the negligence of the supposed grantor in this respect was so great, and his inattention and carelessness to the rights of others so marked, that the law would on that account estop him from setting up his title as against a *bona fide* purchaser for value under such deed." Even conceding some negligence upon the part of the grantor, Wise, in allowing the deed to be removed from the room, it certainly does not reach that degree of negligence which would justify an estoppel against a plea of non-delivery of the deed.

For the foregoing reasons, let the judgment be reversed, and the cause remanded.

HARRISON, J., and PATERSON, J., concurred.

Hearing in Bank denied.

BEATTY, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 28th of April, 1893: —

Beatty, C. J. — Having dissented from the order denying a rehearing of this cause, I desire to state briefly the grounds of my dissent.

The decision of the court is based upon the single proposition that on the facts testified to by the appellant he was not estopped to deny the delivery of his deed as against an innocent purchaser for value from his grantee. There are other questions presented by the record which have been fully argued by counsel; but since they have been left unnoticed by the court, they will not be considered here, it being my intention merely to state my reasons for dissenting from the proposition decided, as to which alone the case becomes a precedent.

If there were no doubt of the soundness of the conclusion that on the facts as stated by the appellant there was no estoppel, it would still, in my opinion, be insufficient to warrant a reversal of the judgment and order of the superior court; for the judge who tried the cause was not bound to accept the appellant's version of the facts upon his own uncorroborated testimony. The possession, by his grantee, of his deed, fully and formally executed, acknowledged, and certified, and containing a recital that the purchase price had been fully paid, was *prima facie* proof of a delivery. It created a presumption against appellant which it became necessary for him to rebut, and his testimony that there was no delivery merely produced a conflict of evidence upon which the finding of the judge who tried the cause should be held conclusive. To rebut the presumption of delivery in such a case for the purpose of defeating the title of an innocent purchaser who has paid a valuable consideration on the faith of the grantee's possession of a deed to which every appearance of validity has been imparted by the voluntary act of the grantor, it is necessary to show not only that there was no delivery as between the parties to the instrument, but that the grantor did not voluntarily intrust it to the custody of the grantee, or allow him to obtain the custody by any culpable negligence; for if the grantor has voluntarily

intrusted such evidence of title to one who abuses his confidence, or even if he has neglected reasonable precautions to prevent his perfected deed from being stolen, he is estopped from denying a delivery as against an innocent purchaser for value. All the authorities sustain this proposition, and none more emphatically than those cited in support of the opinion of the court.

This being so, upon what principle can it be held that a trial court must accept the uncorroborated testimony of the grantor that he did not intrust his grantee with the possession of his deed, and that he was not guilty of culpable negligence in allowing him to get possession of it? It seems to me a sufficiently dangerous rule to hold that such testimony may be accepted to defeat the apparent validity of the deed. To hold that, as matter of law, it necessarily defeats its validity — or in other words, that when the trial judge has found in favor of the presumption, and against the testimony of the interested party, his finding of fact must be reversed on the ground that it is contrary to the evidence — is going beyond all reason, and in the face of numerous decisions of this court. It establishes a new rule, which not only puts it in the power of a party to relieve himself of the consequences of his own folly or negligence at the expense of innocent purchasers, but opens a wide door to deliberate fraud; and this in a class of transactions of every-day occurrence, which it should be the policy of the law to guard, against every element of danger or uncertainty.

But aside from this consideration, which is sufficiently serious, I am entirely satisfied that there is no authority for holding that on a fair construction of the appellant's own statement of the manner in which Adams obtained and kept possession of his deed, he is not estopped to deny a delivery. Two decisions only are cited in the opinion of the court to sustain its conclusion upon this point. In one (*Burson* v. *Huntington,* 21 Mich. 416; 4 Am. Rep. 497), it was held that the maker of a negotiable promissory note was not estopped to deny its delivery as

against an innocent holder for value; and in the other
(*Tisher* v. *Beckwith*, 30 Wis. 55; 11 Am. Rep. 546), it
was held that a grantor of land was not estopped to
deny a delivery of his deed against an innocent pur-
chaser for value. But in each of those cases the in-
strument in question had been obtained by theft, and
without the consent, express or tacit, of the maker.
It had not, in other words, been intrusted by the
maker or grantor to the custody of the payee or gran-
tee, and the only question was one of culpable neg-
ligence. The opinion of the court in each case fully
and expressly concedes that if the instrument had been
voluntarily intrusted to the party making a fraudulent
use of it, the loss must have fallen upon the maker or
grantor. It was also conceded that the same result
must have ensued if the instrument had come into the
hands of the grantee or payee by reason of the culpable
negligence of the maker or grantor. But it was held, on
the peculiar facts of each case, — proved by the testimony
of disinterested witnesses, — that there was no culpable
negligence. In the Michigan case, the maker of the
note, after signing it, but before it was stamped, went
out of the room to get a surety to sign with him, leaving
the note lying on a table, and his sister present, at the
same time directing the payee not to touch it while he
was gone. Before he returned, the payee took the note,
and went away with it, in defiance of the command of
the maker and the protest of his sister. It was held not
culpable negligence to fail to anticipate this criminal
act of the payee.

In the Wisconsin case, the deed, not fully executed,
was placed in a locked trunk, of which the grantor's wife
kept the key. While so kept, it was stolen by the grantee
(the grantor's son), and completed by a forgery. The
court in its opinion distinctly says that if the deed had
been completely executed by the grantor, the loss must
have fallen on him, on account of his negligence in leav-
ing it where the grantee could gain access to it, but
holds that he was not bound to anticipate the theft of

an instrument to which apparent validity could only be imparted " *by the crime of forgery.*"

It seems scarcely necessary to point out the broad distinction between those cases and one in which the grantor shows by his own testimony that his grantee took the deed into his possession and kept it long enough to impose upon an innocent mortgagee by his tacit if not his express consent. All the authorities are clear to the effect that if Adams had asked and obtained express permission of the appellant to take the deed away, the estoppel would have been complete; and if an express consent will raise the estoppel, I cannot see why a tacit consent does not work the same result. If my deed is lying on a table before me, and my grantee tells me by word and act that he is going to take it away with him if I make no effort to prevent him, if I utter no word of protest, I consent as truly as if I did so by express words. This is precisely what the appellant did. He knew, apparently, that he was running a risk, — he did not like it, but he permitted it, — and having enabled his grantee to perpetrate a fraud, he is allowed to saddle its consequences upon an innocent party. More than this, he is allowed to subject an innocent party to a serious hardship, in order that he may reap an advantage from his own wrong. The case shows that the same thousand dollars advanced by the respondent on her mortgage was paid over to the appellant as the second installment of the purchase price of the land, and this, by the decree of the court, he is allowed to keep, together with the first payment, and his land. In other words, he comes out of the transaction with the land that he sold, with the five hundred dollars paid at the date of the sale, and with the thousand dollars of which the respondent has been defrauded by his assistance. If Adams had not been enabled to perpetrate this fraud by the opportunity the appellant gave him, it is to be presumed he never would have made a second payment on his purchase, and the most the appellant could have got would have been the first pay-

ment and the land. By contributing to entrap the respondent he adds to his gains the precise sum and the identical money which the respondent was induced to advance. He is not content to be restored to the position he would have occupied if the fraud had not been committed, but must make all the profit of it.

There is, in my opinion, no rule of equity or law that lends itself to such a conclusion.