**CHANDLER et al. v. GRIFFITH et al.**

No. 16886—Opinion Filed Sept. 14, 1926.

Rehearing Denied Nov. 16, 1926.

1. **Landlord and Tenant—Nondelivery of Lease—No Rights Acquired by Wrongful Possession.**

The taking possession of a lease contract without the knowledge or consent of the lessor and without it was intended that it should be legally operative at the time, is a fraud upon the rights of the lessor, and does not constitute a delivery of the contract, and passes no title to the lessee, and the fact of nondelivery in such cases may be asserted against said lessee and also his assigns.

2. **Same—Evidence of Nondelivery of Lease.**

Where the lessee obtains possession of the lease contract and places same of record, without the knowledge or consent of lessor, and the undisputed evidence shows that it was not intended that it should become legally operative at that time, the giving of a release, without consideration, upon demand of the lessor, is a strong circumstance tending to corroborate the evidence of nondelivery.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Seminole County; George C. Crump, Judge.

Action by C. E. Griffith and Edward L. Dew, Jr., against G. L. Green, R. M. Chandler, and W. E. Chandler for possession of real property and for damages. Judgment for plaintiffs, and defendants R. M. Chandler and W. E. Chandler appeal. Reversed.

Pryor, Stokes & Carter and Hugh Murphy, for plaintiffs in error.

White & Nichols, for defendants in error.

Opinion by THREADGILL, C. Defendants in error were plaintiffs in the trial court and plaintiffs in error were defendants, and the parties will be referred to here as they appeared in the trial court.

Plaintiffs brought their action against the defendants on four counts The first, for possession of lot 4 in block 1, on the east side of Wewoka avenue, in the city of Wewoka, and the two-story building thereon, under a lease contract, and damages in the sum of $400 per month for the wrongful detention thereof since November 1, 1923; the second, to quiet their title against the defendants; the third, to restrain the defendants from disposing of the property during he pendency of their action; the fourth, for an alternate judgment for $2,200, being the amount of money they paid for the lease involved, and $5.000 damages for loss of profits in failing to get possession of the property. The defendants, by their answer, denied the validity of the lease contract and the assignment pleaded as the basis of the action. They say the lease contract was part of a sales transaction for a drug business conducted in the said building, and was to be placed in escrow with a sales contract for 30 days, the time given for fulfilling the sales contract, but same was fraudulently taken from them by the lessee, G. L. Green, and placed of record without their knowledge or consent, and plaintiffs had full knowledge of their rights

at the time they procured the assignment of said lease contract. They further deny plaintiffs' right to possession; deny the indebtedness alleged and liability for damages.

The undisputed facts in the case, as shown by the record, were substantially as follows: The defendant R. M. Chandler owned the property in controversy, and she and her brother, W. E. Chandler, the other defendant, conducted a drug business in the building. W. E. Chandler acted as agent for his sister, R. M. Chandler, in the management of the property, and in the transaction of the business leading up to this lawsuit. The plaintiffs conducted a drug business in Okemah, and they desired to move their business to Wewoka. About the 12th to the 16th of September, 1923, C. E. Griffith had two or three conversations over the phone with W. E. Chandler, about selling the drug business and renting the building. The initiative of these conversations was started by a note to W. E. Chandler left at the drug store by Griffith on September 12th, in which he informed him that he had, or knew, some parties that would buy the drug business. Chandler was absent at the time, and when he returned in the evening this note was given him. He called Griffith over the phone at Okemah, and they talked about selling the drug stock and renting the building, and, in two or three conversations they had up to the 16th, Chandler informed Griffith that he wanted $5,000, for the stock of drugs. which Griffith said was too much money, and Chandler informed him that they would not rent the building without selling the stock. Chandler requested that Griffith come over to Wewoka and see him, and he promised to do so the next day, but failed. On September 17th, G. C. Green, and a man by the name of E. W. Hunt, came to see Chandler, and they represented that they wanted to buy the drug stock and rent the building. They failed to agree on the price. On the next day, September 18th, Chandler was called by phone to the office of R. J. Roberts, an attorney in Wewoka, where he found E. W. Hunt and the attorney, and Hunt and Chandler further discussed the sales and lease transaction, in the course of which conversation Hunt falsely represented himself to be the owner of a chain of stores, and they finally agreed on $4,750 as the price of the stock and $225 per month as the rental price of the building for a period of two years and a day. Hunt wanted the papers drawn and Green's name inserted as the purchaser in the sales contract and the lessees in the lease contract, but Chandler would

not agree to this, contending that Green must be present when this was done. Chandler left the office, and in a few minutes was recalled as Green had just come in from Shawnee. Again they had considerable discussion over the transaction, and how to meet the bulk sales law, and it was finally agreed that the matter be closed by a bill of sale for the stock and a lease contract for the building, but in the name of Green, and the papers should be placed in escrow, and 30 days' time be given for comp'ying with the bulk sales law, and the payment of the consideration for the stock of drugs, and a $200 forfeit by Green to fulfill the contract. The attorney drew the papers, and they were executed and placed on the table in the office, but Green took the lease contract without knowledge or consent of Chandler or the attorney, and placed it of record on the same day. On September 21st, Chandler learned that the lease contract had been placed on record, and he saw Green and demanded of him a release, and Green gave the release, but Chandler did not place this release on record till the morning of the 26th, five days after it was executed. In the meantime, on the night of September 18th, Green called Griffith over the phone at Okemah, and inquired if he would be interested in a lease on lot 4 in block 1, on the east side of Wewoka avenue in Wewoka. This is Griffith's testimony. He answered he would. They agreed to meet in Guthrie, then by another call they agreed to meet in Oklahoma City on the next day, September 19th, and on the following day they agreed on the terms of the assignment, and Griffith and his partner, Edward L. Dew. Jr., paid Green $650 cash, and agreed in writing to pay $1,850 within 30 days. On September 23rd, Green went to see Griffith about one o'clock at night, and in an excited manner asked if he could not get the balance of the money on the lease. The next morning, Green proposed if Griffith would pay the balance of the money he would "knock off" $250. This was agreed, and they met again in Oklahoma City, and Dew went to Terrell, Tex., and borrowed $1,600, the balance of the money, from a bank there, and had it forwarded to a bank in Oklahoma City, subject to Green's order. The next day. the 25th, Chandler learned. through a young man who happened to drop into the store. about Griffith's plan to move his stock of drugs from Okemah to the Chandler property in Wewoka, and he called Griffith over the phone, but could not get him, as it seems he was in Henryetta, and Griffith, learning about the call when he returned in the evening, phoned Chandler and informed him

that he had the lease on the store. The next day, the 26th, Griffith came to Wewoka and found that Chandler had placed the release from Green on record. Griffith says he then phoned the bank in Oklahoma City not to pay out the money received from the bank in Terrell, Tex., but the money had already been paid out to Green. About noon of the same day, Griffith called Chandler from some place in town and stated according to Chandler's testimony:

"I don't want Hunt and Green to see me talking with you. I am going out of town and you may look for me back tomorrow or next day."

He did return, but in company with his attorney, and Chandler took them to his attorney, and from this time on the attorneys handled the transaction in court. According to the record, the lease contract was made and dated September 18, 1923, and placed of record the same day. The contract for the assignment was made and dated September 20, 1923; the assignment dated and acknowledged September 29th. Green and Hunt gave no testimony in the case. The cause was tried to the court June 26, 1924, and resulted in a judgment for plaintiffs in the sum of $2,500 with six per cent, interest from September 25, 1923. During the trial. near the close of the evidence, the court used this language:

"It is not a question of fact, just a question of whether or not they could go out and get a couple of sharks and come in here and dabble with this fellow's rights. That is what I think about it."

The court rendered judgment for plaintiffs on the theory that they were innocent purchasers for value, without notice, and had no part in the fraud practiced by Green and Hunt on the defendants. The defendants have appealed, and contend that this judgment is contrary to the law and the evidence.

From the facts in the case, as we view them, there is but one question decisive to the appeal necessary for us to consider. That is, whether or not G. L. Green got possession of the lease contract in violation of the escrow agreement, or without the consent of the lessor. The evidence is not very clear as to the escrow agreement. The attorney, who drew the papers, testifies, without objection, that the bill of sale for the stock was to be placed in escrow with an agreement in writing providing for 30 days for complying with the bulk sales law, and a $200 forfeit on the part of G. L. Green and E. W. Hunt, but nothing was said about the lease being placed in escrow. We are not able to say from this testimony whether

the witness means to say there was nothing said in the written agreement about the lease contract, or that there was nothing said in any way about the lease being placed in escrow. The written escrow agreement was not offered. W. E. Chandler testified:

"I never would agree to sell the stock unless I leased the building, nor would I agree to lease the building unless I sold the stock to Hunt with an escrow agreement with all."

The attorney could not say that there was a delivery of the lease made to Green after the papers were prpared. Chandler says that the papers were drawn up and placed on the table, and Hunt got the lease and put it in hos pocket, and he insisted that all the papers he placed ogether on the table to be put in escrow, and the attorney looked for the oroginal lease and Hunt took it out of his pocket and placed it on the table, and after this Green got the lease without his knowledge or consent. and placed it on record on that date.

Regardless of whether or not the agreement to place this lease contract in escrow was in writing. or was verbal, it is evident that the taking of it was unauthorized and wrongful, and this is emphasized by the fact that Green, upon demand of Chandler, executed a release thereof on September 21st, and it therefore passed no title.

The general rule applicable in such case is land down in Tiffany on Real Property (2nd Ed.) vol. 2, sec. 461, p. 1743. as follows :

"It being conceded that even a voluntary transfer of the instrument by the grantor to the grantee does not involve a delivery if not within the intention that the instrument shall be lekally operative, it necessarily follows that the instrument cannot be regarded as having been delivered merely because the grantee has acquired possession thereof without the grantor's consent. And it has been decided that the fact of nondelivery in such case may be asserted even as against a subsequent bona fide purchaser. who purchased in reliance on the grantee's possession of the instrument." Citing Gould v. Wise et al., 97 Cal. 532, 32 Pac. 576, 33 Pac. 323, and other cases.

In the case of Wood et al. v. French, 39 Okla. 685, 136 Pac. 734, this court states the following rule:

"Where the grantor retains the actual possession of the land, although such possession is not notice of his adverse claim of ownership, his escrow deed is invalid to transfer any right, in absence of performance of condition; and the wrongful yielding of possession of such deed to grantee

by depository transfers no title, even though the claimant thereunder be an innocent purchaser for value."

These authorities are applicable to the facts in this case, and are decisive of the question under consideration.

The trial court's judgment fails to take into consideration the wrongful taking of the lease contract by G. L. Green, the plaintiffs' vendor, as well as the rule of law applicable thereto.

The judgment is therefore reversed, and the cause is remanded for a new trial.

By the Court: It is so ordered.

Note.—See 35 C. J. p. 1155, §418; 16 R. C. L. 566.