[Civ. No. 15084. Second Dist., Div. Three. Apr. 30, 1946.]

CARRIE PETERSON, as Administratrix, etc., Appellant, v. VERNON WILBUR PETERSON et al., Respondents.

David Schwartz for Appellant.

Arch H. Vernon, Earl E. Johnson, Gilbert E. Harris and Louis Ballenger for Respondents.

FOX, J. pro tem.—Plaintiff appeals from a judgment in favor of the defendants. She brought this action as the administratrix of the estate of Grace Grabel, deceased. In her fourth amended complaint she alleges six separately stated causes of action. The first cause of action is to quiet title to certain real property; the second is against only two of the individual defendants and is for the recovery of the reasonable rental value of the property for the period the said defendants are alleged to have been in possession thereof; the third is for conversion of personal property; the fourth is for money had and received; the fifth is to recover damages because of the alleged fraud on the part of the individual defendants by which title to said property became vested in defendant Palmer; and the sixth is for the cancellation of the deed of trust held by the defendant bank on the said property. The third and fourth causes of action were settled.

In 1927 Mike Grabel and his wife, Grace, acquired the real property involved in this litigation from Dolph C. Dodds and his wife, Helen. The property was at that time subject to a deed of trust executed by the Dodds to the Security Housing Corporation, which was later assigned to the Metropolitan Trust Company. The Grabels took the property subject to the balance owing on the trust deed. They continuously resided on the property until 1934, when Mr. Grabel died. Mrs. Grabel continued to occupy the property until her death on June 10, 1940.

The trust deed loan not having been paid, the trust company started foreclosure proceedings in 1935. Thereupon, in October of that year, Mrs. Grabel went to see W. C. Dansie and gave him the money to pay the balance due on the loan and told him to "take the trust deed over for her." He took care of the matter "merely . . . to accommodate Mrs. Grabel." Upon the payment of the balance due the trust company assigned the trust deed to Mr. Dansie and delivered to him the

cancelled note. The assignment of the trust deed was not recorded and Dansie turned the papers over to Mrs. Grabel.

In the fall of 1940 (after the death of Mrs. Grabel) defendant Vernon Wilbur Peterson, who had been living at the Grabel home for some time, told Dansie that he wanted to clear the title to the Grabel home and inquired of Dansie if he had any interest in the property. Dansie told him he had no claim on the property. Some time later Peterson came back and he (Dansie) "signed some papers for him" which he now believes "was an assignment of the trust deed to the property involved in this case." Dansie "felt" that he "was helping Mrs. Grabel clear the property." He did not know that she had passed away until after he had signed the papers. He indicated he would not have signed the papers if he had known that she was dead. Defendant W. H. Beeman was with Peterson on these two occasions. The Dansie assignment of the deed of trust was to defendant Edith Peterson and was recorded on November 19, 1940. She executed a notice of default under said deed of trust on December 31, 1940. It was recorded at the request of the trustee on January 7, 1941. The trustee thereafter duly gave notice of sale; held its trustee's sale; executed and delivered its trustee's deed to Edith Peterson as purchaser at said sale. Later, Edith Peterson, who was represented in the foreclosure proceedings and sale by defendant, W. H. Beeman, sold the property to defendant Palmer for $3,350. Thereupon, defendant Palmer borrowed $1,800 from the bank and executed the trust deed as security therefor, which is involved in the sixth cause of action.

The court found that defendant Palmer was a good faith purchaser for value, and that the defendant bank's trust deed encumbrance on the property was valid. Plaintiff challenges the sufficiency of the evidence to support the finding in favor of Mrs. Palmer and contends that the court erred in holding that the bank's trust deed constitutes a valid lien on the property. Neither of these contentions is well founded.

There is no evidence that defendant Palmer knew the chain of circumstances leading up to the acquisition of title by Edith Peterson. She was simply told that Mrs. Peterson had obtained the property "through foreclosure."

On the question as to the amount paid for the property both Mrs. Peterson and Mrs. Palmer testified that the purchase price was $3,350. Mrs. Palmer testified that she paid

$2,000 of this amount to Mrs. Peterson in cash. There was also a trust deed encumbrance against the property which was placed thereon by Mrs. Peterson and which required about $1,223 to satisfy. This obligation was paid through escrow by the bank out of the $1,800 loan which the bank made Mrs. Palmer on the property. She also paid taxes of approximately $50 and a special assessment of some $40. It is thus clear that substantial value was paid for the property by Mrs. Palmer, and the price paid by her does not appear to have been out of line with the fair value of the property at the time of the sale.

Plaintiff makes a strong attack upon the testimony relative to the purchase price paid for the property as inherently improbable and therefore of no evidentiary value. She bases this conclusion upon the relationship of the parties, the manner in which the transaction was handled, and certain inconsistencies in the testimony of Mrs. Peterson and Mrs. Palmer. She emphasizes the fact that Edith Peterson is the mother of Vernon Wilbur Peterson and that Ruth Beeman is her niece; also that some months after the sale to Mrs. Palmer she married Vernon Wilbur Peterson, whom she did not meet, however, until about a week before she became interested in the property. These were matters for the trial court to take into consideration in passing on the credibility of the witnesses. There is no rule of law that stigmatizes the testimony of persons so related as inherently improbable. Plaintiff attacks the testimony of Mrs. Palmer, relative to the price she paid for the property, as inherently improbable because the sale was not handled through an escrow. Mrs. Palmer stated by way of explanation on this point that she felt she did not need an escrow because the property "had just been taken through foreclosure." Plaintiff also challenges as inherently improbable her testimony that she paid Mrs. Peterson $2,000 in cash. Such testimony does not come within the rule of inherent improbability. Before evidence can be disregarded as inherently improbable there must exist a physical impossibility of the evidence being true, or its falsity must be apparent without resort to inferences or deductions. (*Poe* v. *Lawrence* (1943), 60 Cal.App.2d 125 [140 P.2d 136]; *Collier* v. *Los Angeles Ry. Co.* (1943), 60 Cal.App.2d 169 [140 P.2d 206]; *Powell* v. *Powell* (1919), 40 Cal.App. 155 [180 P. 346].) The fact that the testimony may disclose circumstances which are unusual is not sufficient to bring it

within the rule (*Kidroski* v. *Anderson* (1940), 39 Cal.App.2d 602 [103 P.2d 1000]). ▇ Plaintiff points to certain inconsistencies in the testimony of Mrs. Palmer as to who, if anyone, was present when she paid Mrs. Peterson the $2,000. These inconsistencies do not stamp her testimony as inherently improbable (*Jones* v. *Re-Mine Oil Co.* (1941), 47 Cal.App.2d 832 [119 P.2d 219]). ▇ Conflicts in the evidence are, of course, to be resolved by the trier of the facts. This rule also applies to conflicts and inconsistencies in the testimony of an individual witness. (*Showalter* v. *Western Pacific R. R. Co.* (1940), 16 Cal.2d 460, 479 [106 P.2d 895]; *People* v. *Moulton* (1945), 71 Cal.App.2d 195 [162 P.2d 317].) ▇ The net result is that there is substantial evidentiary support for the challenged finding. Hence it will not be disturbed on appeal. (*Crawford* v. *Southern Pacific Co.* (1935), 3 Cal.2d 427 [45 P.2d 183].) ▇ Since, therefore, defendant Palmer was a bona fide purchaser, her title was purged of any fraud that may have been engaged in by prior parties in their dealings concerning the property. (*Marlenee* v. *Brown* (1943), 21 Cal.2d 668, 675 [134 P.2d 770].)

▇ Plaintiff's attack on the validity of the bank's trust deed lien is based upon the theory that the fraudulent procurement of a deed will not operate to pass title. Hence, subsequent purchasers and encumbrancers, even though they are in good faith and for value, will not be protected. In support of her proposition, plaintiff cites *Gould* v. *Wise* (1893), 97 Cal. 532 [32 P. 576, 33 P. 323] and *Promis* v. *Duke* (1929), 208 Cal. 420 [281 P. 613]. In the latter case the grantee got possession of the deed from the escrow-holder without the knowledge or consent of the grantor and without complying with the agreed conditions for the delivery of the deed. In the Gould case the grantee surreptitiously got possession of the deed without the grantor's consent. There was no delivery of the deed in either of these cases, hence no title passed. That principle, however, is not applicable here. In the instant case Dansie was Mrs. Grabel's agent. He paid the mortgagee the balance that was due and requested that the trust deed be assigned to him. This was done and the assignment, together with the cancelled note, were delivered to him. These papers in turn were delivered to Mrs. Grabel. Thus Dansie was clothed with the indicia of ownership of the trust deed at his request and was permitted to remain so clothed with the full knowl-

edge and consent of Mrs. Grabel. He may have been negligent in executing an assignment of the trust deed to Edith Peterson at the request of Vernon Wilbur Peterson in 1940, or he may have been induced to execute the assignment through misrepresentation of the purpose for which the assignment was desired. But in any event the evidence supports the inference that Dansie intended to execute the assignment. Certainly the evidence does not, as a matter of law, require a contrary finding. There is no contention that the bank had any knowledge of any fraud on the part of any of the individual defendants or of any facts as to the title of the property other than as disclosed by the official records in the county recorder's office. Therefore, the bank as a subsequent bona fide encumbrancer is entitled to have its trust deed lien protected. (*Fly* v. *Cline* (1920), 49 Cal.App. 414 [193 P. 615]; *Blaisdell* v. *Leach* (1894), 101 Cal. 405 [35 P. 1019, 40 Am.St.Rep. 65]; 25 Cal.Jur. 820.)

When the case was called plaintiff requested a jury, the fee therefor having been previously deposited. The court denied this request ''as to the causes of action in equity'' and proceeded to try the first and sixth causes of action without a jury. The court also disposed of the two remaining causes of action, viz., the second and fifth. This was error insofar as the fifth cause of action is concerned as to all of the individual defendants, except the defendant Palmer.

Plaintiff's first cause of action to quiet title presented purely equitable issues. The allegations of this cause of action are in the usual form. The facts, however, on which it was based, appear in the fifth cause of action. It is there alleged, among other things, that the property of plaintiff's intestate was subject to a deed of trust; that a trustee's sale had been held thereunder; and that the defendants Palmer and the bank had succeeded to the title of the purchaser at the trustee's sale. Obviously, only a court of equity could set aside this legal title of record in the defendants and adjudicate that the Grabel estate was the owner of the real property in question. The sixth cause of action (against the bank alone) was for the cancellation of the bank's trust deed and the lien thereby created. The issues thus presented by the first and sixth causes of action and the relief sought were clearly equitable.

The fifth cause of action, however, is to recover as damages the alleged value of the property on the theory that the individual defendants ''conspired together for the pur-

pose of cheating and defrauding the said estate of Grace
Grabel . . . out of said property'' and that pursuant to their
fraudulent plan and scheme they did defraud the estate out
of said property. The relief sought on this cause of action
is a money judgment against the individual defendants. Plain-
tiff's theory of action, as stated in her fifth cause of action,
is obviously an action at law for damages against each person
connected with the alleged fraud. (*Hutchason* v. *Marks*
(1942), 54 Cal.App.2d 113, 118 [128 P.2d 573].) As to the
issues of fact raised by that cause of action a trial by jury
was a matter of right. (*Pacific Western Oil Co.* v. *Bern Oil
Co.* (1939), 13 Cal.2d 60 [87 P.2d 1045].) In *Crouser* v. *Boice*
(1942), 51 Cal.App.2d 198 [124 P.2d 358], it is said (p.
200) that ''Where legal and equitable remedies are sought in
the same action, each remedy is governed by the law that
would apply to it if the other remedy had not been requested.
Thus, even though the action is essentially equitable, if the
plaintiff requests legal relief, the parties are entitled to a
jury trial on the legal issue.'' In *Connell* v. *Bowes*
(1942), 19 Cal.2d 870, 871 [122 P.2d 456], the court points
out that ''It is now established in this state . . . that if a com-
plaint states two complete rights of action, one legal and one
equitable, a jury trial may be obtained upon the issues raised
by the legal cause.'' In such circumstances, however, ''the
equitable issues are tried first and then, if any legal issues
remain, a jury may be called.'' (*Connell* v. *Bowes, supra,* p.
872; *Angus* v. *Craven* (1901), 132 Cal. 691, 699 [64 P. 1091];
and *Thomson* v. *Thomson* (1936), 7 Cal.2d 671 [62 P.2d 358,
117 A.L.R. 1].) The practical reason for this procedural
rule is that the trial of the equitable issues may obviate the
necessity of a trial of legal issues (15 Cal.Jur. § 13, p. 337).
The practicability of this procedure is manifest in the instant
case. In her first cause of action plaintiff seeks to establish
her intestate's title to the property in question and that the
defendants' claims thereto are without right. In her second
cause of action she seeks to recover from the defendant Palmer
and her husband the reasonable rental value of the property
for the period they were in possession thereof. The
determination, however, of the first cause of action adversely
to the plaintiff and that defendant Palmer had purchased said
property in good faith and for value had the effect of also es-
tablishing that plaintiff was not entitled to any relief against

Mrs. Palmer on either the second or fifth causes of action. When the equitable issues were thus settled no legal issues remained to be tried as to Mrs. Palmer and the bank. (See *Connell* v. *Bowes, supra; Thomson* v. *Thomson, supra,* p. 683.) The trial of the equitable issues did not, however, determine the plaintiff's right to damages on the fifth cause of action for the alleged fraud of the Petersons and Beemans by which, it is claimed, they cheated the estate out of said property. On these legal issues the parties were entitled to a jury trial. (*Pacific Western Oil Co.* v. *Bern Oil Co., supra; Connell* v. *Bowes, supra.*) ▮ It cannot be said that the denial of a jury trial on the legal issues was without prejudice. It is not disputed that Mr. and Mrs. Grabel purchased the property in 1927 subject to a trust deed encumbrance; that they lived together on the property until the death of Mr. Grabel in 1934, during which time they made various improvements thereon; that in 1935 Mrs. Grabel gave Dansie the money to pay off the said encumbrance; that Dansie paid off the balance due on the said trust deed note and took an assignment of the trust deed in his own name; and that Mrs. Gabriel continued to occupy the property until her death in June, 1940. It is thus clear that at the time of her death Mrs. Grabel held the equitable title to the property, and that her agent, Dansie, held the assignment of the trust deed for her use and benefit. She was entitled to possession, and was in possession. Any finding of the trial court that her interest in and right to said property and the possession thereof was less than here stated is without evidentiary support. The evidence would have supported implied findings by the jury (had there been one) that Peterson secured the assignment of the trust deed from Dansie through fraud and misrepresentation; that Beeman was a party thereto; that no consideration was paid Dansie for said assignment; that Edith Peterson paid no consideration for said assignment; that she was a party to and familiar with the alleged fraudulent plan and scheme of her son and Beeman; that the latter handled the foreclosure proceedings for her and financed the same; that he caused her to execute a trust deed in favor of Eva Nelson which, however, was assigned to his wife, Ruth, as security for the money he had advanced in connection with the foreclosure proceeding; that he assisted Mrs. Peterson in selling the property to Mrs. Palmer; and that as a result of the concerted and fraudulent acts of the Petersons and Beemans the estate of Mrs. Grabel lost the said

property. Under such implied findings the verdict of the jury would necessarily have been in favor of the plaintiff.

When the court denied plaintiff's motion for a jury trial "as to the equitable causes of action" and indicated its intention to proceed with the trial of the first cause of action without a jury, the plaintiff then made a motion to amend said cause of action by adding the allegation that the plaintiff was out of possession of the said premises and that certain of the individual defendants were in possession. The court denied the motion. Plaintiff's claim of error in this ruling is without merit. This was the fourth amended complaint and the trial had opened. The granting or denying of such a motion to amend is largely a matter of judicial discretion, and the ruling will not be disturbed on appeal in the absence of a clear abuse of such discretion. No such abuse is here shown or suggested. No explanation is offered as to the plaintiff's tardiness in making the request to further amend and no showing is made of how such an amendment would be in furtherance of justice.

At the outset of the trial the defendants W. H. Beeman and Ruth F. Beeman disclaimed any interest in the property. Later the plaintiff sought to examine W. H. Beeman as an "adverse party as if under cross-examination." This request, which was based on section 2055, Code of Civil Procedure,[1] was denied. Plaintiff assigns this ruling as reversible error. Her position, however, is not well taken. As to the cause of action to quiet title and the cause of action to cancel the trust deed of the bank the plaintiff was not entitled to examine Beeman under section 2055, Code of Civil Procedure. By his disclaimer Beeman was no longer an adverse party in the quiet title cause of action (*Johnston* v. *St. Sure* (1920), 50 Cal.App. 735 [195 P. 947]), and he was not even named as a defendant in the cause of action to cancel the trust deed. He was not a defendant in any of the other causes of action except the fifth, which is for damages for having fraudulently deprived the Grabel estate of the property. As to that cause of action he is one of the real parties in interest and, under our decision, he must stand trial thereon before a jury.

---

[1]Section 2055 of the Code of Civil Procedure reads in part as follows: "Examination of adverse party. A party to the record of any civil action or proceeding or a person for whose immediate benefit such action or proceeding is prosecuted or defended . . . may be examined by the adverse party as if under cross-examination, . . ."

Upon such new trial Beeman will, of course, be subject to examination under section 2055, Code of Civil Procedure.

Although Beeman was still "a party to the record" the plaintiff does not appear to have suffered any prejudice by the court's refusal to permit him to be examined "as if under cross-examination," insofar as the first and sixth causes of action were concerned. The real question was whether defendant Palmer was, in fact, a good faith purchaser for value of the property. Beeman, according to the testimony of defendant Edith Peterson, represented her in the trust deed foreclosure sale by which she acquired title to the property and in the sale to defendant Palmer. There is no suggestion that he also represented defendant Palmer in the transaction.

Plaintiff also contends that the court erred in rejecting certain documents that were offered in evidence. Neither the relevancy nor the materiality of these documents on the issues involved in the first and sixth causes of action is made to appear.

The judgment is affirmed except on the fifth cause of action as to defendants Vernon Wilbur Peterson, Edith Peterson, W. H. Beeman and Ruth Beeman, and as to said defendants on said cause of action the judgment is reversed, appellant to recover costs against said defendants.

Shinn, Acting P. J., and Wood, J., concurred.

A petition for a rehearing was denied May 28, 1946, and appellant's petition for a hearing by the Supreme Court was denied June 27, 1946.